No. 44,573

STATE OF KANSAS, *Appellee,* v. ROBERT LEWIS MOFFITT, *Appellant.*

(431 P. 2d 879)

Opinion filed August 31, 1967.

*Russell Shultz*, of Wichita, argued the cause, and *Larry Kirby*, also of Wichita, was with him on the brief for the appellant.

*Keith Sanborn*, County Attorney, argued the cause, and *Robert C. Londerholm*, Attorney General, and *R. K. Hollingsworth*, Deputy County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal in a criminal action wherein the appellant was found guilty by a jury of murder in the first degree; possession of a pistol after conviction of a felony; two counts of attempted first degree kidnapping; and two counts of felonious assault.

The principal points presented on appeal concern questions of law based upon the instructions given by the trial court as applied to the evidence in the case.

The material facts disclosed by the evidence in the record are not in dispute.

Shortly after midnight on the 8th day of August, 1965, a young colored housewife twenty-two years of age named Mary Alice Downing was sitting on the seat of a motorcycle parked on the street in front of the house at 1324 Wabash in the city of Wichita, Kansas, waiting for a man with whom she had been riding, one L. C. Goines. He had gone into the house where he resided to

check on the welfare of an aged mother. While seated on the motorcycle which was headed north and near the east curbline of the street, she was struck in the back of the head with a bullet, part of which lodged in her brain. Goines had just gone into the house when he heard a report, which sounded like a shot, and heard a car speeding away. He ran out of the house and found Mary Alice Downing slumped over his motorcycle and saw blood running. She was immediately taken to the St. Francis Hospital at Wichita where she was pronounced dead at 2:40 a. m.

Although the exact chronology of events which occurred in the early morning hours of August 8, 1965, is not definitely established, the evidence discloses that a white 1953 or 1954 model Oldsmobile automobile driven down Ohio Street from the north in the 1000' block pulled over to the side of the street at 1037 Ohio and stopped where a man named Augustus Wells, Jr., and a woman named Lucretia Brown were walking north on the sidewalk along the west side of the street. As the automobile came to a halt a man told them to get into the car, and immediately a pistol was projected outside the right hand window of the automobile, snapped twice, and then fired four times. At the time the gun fired they were only six or seven feet from the automobile. No one was hit and none of the slugs that were fired from the gun on this occasion was recovered.

Also, in the early morning hours of August 8, 1965, a white automobile drove north on Washington Street to the intersection of 11th Street where it made a left turn and pulled up at the northwest quadrant of the intersection. At that place a young woman named Victoria Johnson was proceeding southward and had just reached the intersection. As she reached the corner the white automobile pulled up and a voice from the automobile said, "Get in," and then a gun was immediately fired two, three, or possibly four times. The young woman was four to six feet from the automobile, according to her testimony, but she was not hit. She could not identify the person in the automobile and she did not actually see the gun, although she saw the flash when the gun was fired.

Police officers who were originally called to the scene at 1324 Wabash upon being told that a white automobile had come by and sped away after the gun was fired, immediately began to look for such an automobile. Officer Fletcher was only about one block away when he observed an automobile at the corner of 11th and Washington Streets, which was light in color. He saw the head-

lights and then heard what he thought were three or four shots fired in rapid succession. He thereupon drove toward this automobile at which time the automobile started toward him, and the man driving the car informed him that someone was shooting down there. Whereupon the officer said, "Yes, it was you." The driver of the white automobile then took off at a high rate of speed. The officer immediately reversed the direction of his patrol car and gave chase, never losing sight of the white automobile. The chase was at high speeds and made rounds of several blocks in the immediate location. When the white automobile finally got onto Murdock Street it headed in a westerly direction and drove across to the west side of the city to Riverside Park where the driver missed a turn and rolled the automobile.

At the scene of this accident the driver of the white automobile, dressed in a pair of pants, socks and shoes, with no shirt or underpants, was found to be the only occupant of the vehicle. The wrecked vehicle was described as a white 1954 Oldsmobile 2-door hardtop bearing Kansas license plate SG1574. In the automobile was found an automatic pistol, described as a 7.65 Millimeter Pistola Beretta, Serial No. 408474, part of a box of live ammunition, a clip for the pistol, and two brass empty shell casings of a .32 caliber bullet.

When first seen the appellant appeared to be unconscious and was removed to St. Francis Hospital for treatment. Upon his release from the hospital later the same morning, he was placed under arrest and identified as Robert Lewis Moffitt (defendant-appellant.)

In the investigation which followed empty shell casings were found at the scene of the various shooting incidents: At 1324 Wabash they found one empty .32 caliber shell casing, part of a copper jacket from a bullet, and a lead slug lying in the street; at 1037 Ohio three empty .32 caliber shell casings were found; and at 11th and Washington Streets one empty .32 caliber shell casing was found. Besides this, the copper jacket from a bullet and the lead base of a bullet were both recovered from the brain of Mary Alice Downing.

Captain Bevis, the laboratory supervisor of the Wichita police department and an expert in firearms identification, supervised the investigation and testified that all of the expended cartridges as well as the slugs which were found in connection with this case

were all fired by the automatic pistol which was found in the automobile being operated by the appellant.

The automobile which the appellant had been driving was registered in the name of his father.

The evidence established that early in the evening of August 7, 1965, Robert Lewis Moffitt (defendant-appellant), a white male, had run into a person he had known prior to that time by the name of Donald McDonald, a colored male. They began drinking beer and whiskey in a place known as Frank Jones' beer tavern in the 900 block on North Washington Street. The appellant was furnishing the beer and whiskey, and during the course of the evening they came into contact with a colored female named T. Esther Hearns who sat in the same tavern and drank whiskey with them. In the course of the evening arrangements were made to go to the house of T. Esther Hearns at 1301 Estelle Street. Two other colored men accompanied them, one being L. V. Rogers who lived with T. Esther Hearns. The four men in this party of five upon meeting at 1301 Estelle drank whiskey and engaged in a dice game. When the evening began, the appellant is reported to have said he had a bunch of money. After the gambling had proceeded for a while, T. Esther Hearns went to bed and left the four men gambling. L. V. Rogers testified the gambling broke up after about an hour because he had all the money.

Later the three men with whom the appellant had been gambling decided to leave the place to get some more whiskey, thus leaving T. Esther Hearns and the appellant in the house alone. According to T. Esther Hearns, she was awakened by the appellant, whom she says at that time had removed his clothing except his shoes and socks and was standing, or rather sort of sitting on the side of the bed, making advances toward her, wanting to have intercourse with her. She said upon her refusal the appellant struck her at which time she got up, went into the kitchen and got a butcher knife with which she drove him from the house. When the appellant left the house he was wearing nothing except his shoes and socks, carrying his clothes in his arm. He got into the white 1954 Oldsmobile automobile and drove away.

The appellant evidently realizing that his money was gone went to his father's home at 1106 Ash where he obtained the pistol involved and the ammunition for it. He then drove back to see if he could find the place where his money had been taken from him. He could not find the house where T. Esther Hearns lived, but did

go up to one house at 11th and Green and looked into the window. Upon discovering that it was not the house, the appellant left and went around the block, at which time he had a slight collision with another automobile, a 1959 Chevrolet. A paint sample taken from the right front bumper of the automobile which the appellant was driving was identified with a paint sample taken from the left rear of the Chevrolet automobile. Thereafter he drove around the area where the events heretofore related took place, culminating in his apprehension and arrest.

The police officer who first saw the appellant after he wrecked his automobile testified that the appellant had no money in his billfold which he had on his person. The appellant's father testified that he found the appellant's other billfold in the automobile sometime later under some newspapers on the floor board of the front seat of the car, and that it also contained no money.

The evidence disclosed that the appellant had never met Mary Alice Downing, the deceased, Lucretia Brown, Augustus Wells, Jr. or Victoria Johnson. It is established that the appellant and the decedent were perfect strangers to each other at the time he shot her in the back of the head, and the appellant and the other persons at whom he shot were likewise strangers to each other.

The appellant was charged by the state upon an information in six counts as follows: Count I—illegal possession of a pistol after felony conviction, contrary to K. S. A. 21-2611; Count II—first degree murder, contrary to K. S. A. 21-403; Count III—attempted first degree kidnapping, contrary to K. S. A. 21-101 and 21-449; Count IV—felonious assault, contrary to K. S. A. 21-431; Count V —attempted first degree kidnapping, contrary to K. S. A. 21-101 and 21-449; and Count VI—felonious assault, contrary to K. S. A. 21-431.

The case was tried to a jury which took two days to impanel, and the trial proceeded for seven days, the defendant presenting no evidence. The trial resulted in a conviction on all counts. As to the murder count the jury specifically found:

". . . the defendant guilty of count two in the information, *first degree murder and the killing of Mary Alice Downing while in the commission of a felony and* assess the penalty at hard labor in the penitentiary for life." (Emphasis added.)

The appellant filed a motion for a new trial which the trial court heard and overruled on the 10th day of January, 1966.

From the evidence in the case the journal entry recites the trial

court found the appellant had previously been convicted of a felony, namely third degree burglary and larceny in connection therewith in the district court of Sedgwick County, Kansas, No. A52669 on the 23rd day of December, 1954, and was thereafter confined in the Kansas State Industrial Reformatory at Hutchinson, Kansas, in accordance with the sentence therein pronounced.

The appellant was thereupon sentenced:

". . . to the Kansas State Penitentiary at Lansing, Kansas, there to be confined for a period not exceeding five (5) years on the charge of Illegal Possession of a Pistol After Felony Conviction, Count One, contrary to K. S. A. 21-2611, and in accordance with K. S. A. 21-2611, 21-107a, and 21-109, as provided by law; and there to be confined for the duration of his natural life on the charge of First Degree Murder, Count Two, contrary to K. S. A. 21-401, and in accordance with the verdict of the jury which tried this case, as provided by law, said sentence to run consecutively with the sentence imposed upon the defendant in Count One herein; and there to be confined for a period of ten (10) years on the charge of Attempted First Degree kidnapping, Count Three, contrary to K. S. A. 21-101 and K. S. A. 21-449; and there to be confined for a period of ten (10) years on the charge of Felonious Assault, Count Four, contrary to K. S. A. 21-431; and there to be confined for a period of ten (10) years on the charge of Attempted First Degree Kidnapping, Count Five, contrary to K. S. A. 21-101 and K. S. A. 21-449, said sentence to run consecutive to the sentence imposed upon the defendant in Counts Three and Four herein; and there to be confined for a period of ten (10) years on the charge of Felonious Assault, Count Six, contrary to K. S. A. 21-431, said sentence to run concurrently with the sentence imposed upon the defendant in Count Five herein. . . ."

The first specification of error raised by the appellant is that the trial court erred in admitting or allowing the entire court file disclosing the appellant's prior felony conviction in 1954 to be taken to the jury room to be considered by the jurors.

In the course of the trial the state, to show a prior conviction of the appellant, procured court file No. A52669 from the office of the clerk of the district court of Sedgwick County, Kansas. The file was marked Exhibit No. 55 and presented to the trial court, who was asked to take judicial notice of the journal entry. It disclosed the appellant had prior to the alleged offenses herein been convicted of third degree burglary and larceny in connection therewith. The court ruled that it would take judicial notice.

The appellant contends the file was never offered to defense counsel for examination, and that neither the journal entry nor the file was offered in evidence. Furthermore, he argues no instruction was requested from the court regarding the file or journal entry, and the court did not instruct upon them.

The jury in the course of deliberations sent a note to the court

requesting the file which disclosed the prior conviction. After considerable argument the court ruled that inasmuch as it had taken judicial notice of the journal entry, the entire file would be sent to the jury room as an exhibit on the ground that defense counsel had not objected to taking judicial notice of the journal entry.

The appellant concedes the trial court properly took judicial notice of the journal entry disclosing the appellant's prior conviction in the same court. He argues, however, in order to bring the matter which has been judicially noticed properly before the jury, it must either be offered and admitted into evidence as an exhibit or be the subject matter of a proper instruction by the court, neither of which was done in the instant case.

The appellant contends some of the extraneous papers contained in the file made positive identification and connection between the appellant herein and the defendant named in the prior case.

In his brief, however, the appellant "does not argue that he is not one and the same person," and further says, "It cannot be denied that the appellant herein had, in fact, been convicted of a felony prior to this trial."

The subject of judicial notice is now contained in K. S. A. 60-409, 60-410 and 60-411. The matter concerning which the court took judicial notice in this case falls directly within the provisions of K. S. A. 60-411, which state:

"If a matter judicially noticed is other than the common law or constitution or public statutes of this state, the judge shall indicate for the record the matter which is judicially noticed and if the matter would otherwise have been for determination by a trier of fact other than the judge, he shall instruct the trier of the fact to accept as a fact the matter so noticed."

At most, the error complained of by the appellant on this point is technical, and it did not in any way prejudice the appellant in the trial of this case. The only issue argued upon which the point could have been material concerned the identity of the appellant with the person who committed the prior felony. Where, as here, the identity is admitted, the objection necessarily dissipates. Here the prior felony committed by the appellant in 1954 was conceded by the appellant, and the trial court, having taken judicial notice of the journal entry, submitted the file to the jury from which it found the appellant had committed the prior felony as indicated by its verdict in Counts I and II.

Here the state was required to prove the conviction of a prior

felony by the appellant to establish an element of proof in Count I of the information.

Second, the appellant specifies that the trial court erred "in instructions given to the jury in their entirety."

The trial court in submitting the case to the jury gave thirty-three written instructions, and after the jury's deliberations had commenced gave a supplemental instruction in answer to a question submitted by the jury.

Under this specification the appellant makes very brief comment without citing authorities to show the trial court erred. Most of the instructions concerning which the appellant complains are considered in more detail under other specifications where they are individually attacked.

Aside from the usual instructions given to a jury in a criminal case, the trial court instructed the jury on the law by quoting various statutes as follows: K. S. A. 21-2611 (No. 3—possession of a pistol after conviction of a felony); K. S. A. 21-401 (No. 4—murder in the first degree); K. S. A. 21-449 (No. 5—kidnapping in the first degree); K. S. A. 21-431 (No. 6—assault with intent to kill); K. S. A. 21-403 (No. 7—jury to determine penalty upon conviction of murder in the first degree); K. S. A. 21-404 (No. 14—justifiable homicide); and K. S. A. 21-101 (No. 16—attempt to commit offense prohibited by law).

In addition to the foregoing the trial court instructed on lesser included offenses in Count II which charged murder in the first degree (Nos. 9 to 13, inclusive); on intent and felonious intent (No. 17); on "malice," "malice aforethought," "murder," "willful," "deliberate," and "premeditated" (No. 20); on motive (No. 20A); on "deadly weapon" (No. 21); on the words "heat of passion" (No. 22); on circumstantial evidence (No. 23); and the difference between direct or positive evidence and circumstantial evidence (No. 24).

The trial court instructed on premeditated murder by a paragraph added to the murder statute quoted in No. 4. Then following the instruction on intent it gave instruction No. 18 which informed the jury that the law presumes a person to intend the natural consequences of his acts intentionally done, that the presumption prevails unless, after consideration of all the evidence bearing upon the point, it had a reasonable doubt of the existence of such intent. The instruction went on to state if the jury found that the defendant did shoot Mary Alice Downing and that the

natural and ordinary consequences of such shooting would be death, then the presumption of the law is that the defendant shot her with the intent to kill her. The court further instructed that the presumption was not conclusive.

The appellant feebly complains of instruction No. 19 on intent as affected by intoxication, but cites *State v. Rumble*, 81 Kan. 16, 105 Pac. 1, which supports the instruction given. The instruction as given is in accordance with the law of Kansas.

The appellant also complains of instruction No. 24 defining the difference between direct and circumstantial evidence in that it does not advise the jury, in order to convict on circumstantial evidence the circumstances must not only be consistent with guilt but must exclude every other reasonable hypothesis. Though worded in different form the substance of the omission was contained within the instruction given, and we find no error in it. The record fails to disclose any objection by the appellant to the instruction at the time it was given, or that the appellant made a request for an addition to it.

The appellant complains of instruction No. 29 on flight. It reads:

"You are instructed that flight raises the presumption of guilt. Therefore, if you find from the evidence that the defendant, soon after the commission of the offense alleged in the information, fled to avoid arrest and trial, you may take that fact into consideration in determining his guilt or innocence. His flight, if he did flee, is not sufficient in itself to establish guilt, but a circumstance which you may consider in determining the probabilities of his guilt or innocence. The weight to which that circumstance is entitled is a matter for the Jury to determine in connection with all the facts brought out in the case.

"If he fled and his flight is unexplained, the law says it is a fact that may be taken into account against the defendant upon the theory that one's conscience teaches him to know whether he has done right or wrong in a given case."

Flight does not give rise to a presumption of guilt in a criminal case. In isolation, the first sentence of the foregoing instruction was therefore erroneous. In *State v. Thomas*, 58 Kan. 805, 51 Pac. 228, the court said:

"Flight by a person accused of a crime, though not of itself sufficient to support a conviction, is a circumstance that may be shown against him and given such weight as the jury deem it entitled to; and it is not error for the court, in the instructions to the jury, to mention the fact that evidence tending to prove flight has been offered, and may be considered by them as a circumstance bearing on the guilt of the accused, with all the other evidence in the case." (Syl. ¶3.)

In *State v. Marsee*, 93 Kan. 600, 144 Pac. 833, a requested instruc-

tion to the effect that such attempted escape was not proof of guilt, where the evidence tended to show the defendant attempted to escape arrest by flight, was said to be sound. Another requested instruction to the effect that flight was not to be considered as any evidence against the defendant was said to be unsound "for the matter was one to be considered by the jury, with all the other circumstances, for such light as it might throw upon the issue." (p. 605.)

Except for the first sentence, instruction No. 29 is a correct statement of the law. That which follows the first sentence was designed by the trial court to explain how the jury should consider evidence of flight and therefore correctly stated the law in defining what it meant by the presumption. In our opinion this instruction to the jury did not prejudice the appellant.

The other instructions given by the trial court pertain to felony murder and give rise to the primary issue presented on appeal.

Instruction No. 8 reads:

"You are further instructed that Kansas Statutes Annotated, Section 21-401, provides in part as follows: 'Every murder which shall be committed . . . while in the perpetration or attempt to perpetrate . . . a felony shall be deemed murder in the first degree.'

"In this regard you are instructed that if you find from the evidence beyond a reasonable doubt that in the County of Sedgwick and State of Kansas, on or about the date charged in the information, Mary Alice Downing died as a result of an act committed by the defendant while in the perpetration or attempt to perpetrate a felony, and that the death of Mary Alice Downing occurred within one (1) year and One (1) day after and from the effects of the shooting, then you will find the defendant guilty of murder in the first degree.

"In the event that you do find the foregoing from the evidence beyond a reasonable doubt, you are further instructed that it is not necessary for conviction in that event that it be shown that the defendant intended to cause the death of Mary Alice Downing or any other person, nor that the defendant intended for the firearm to be discharged."

The trial court again referred to felony murder by instruction No. 19A, which reads:

"You are instructed that if you find from the evidence beyond a reasonable doubt that Mary Alice Downing was sitting on a motorcycle and that the defendant was in possession of a pistol with a barrel less than twelve inches in length, after having been previously convicted of a felony, burglary in the third degree and grand larceny in connection therewith, and that he shot a pistol and as a result thereof Mary Alice Downing died, then you will find the defendant guilty of Murder in the First Degree, providing you have resolved Instruction No. 17 and 19 against this Defendant.

"You are further instructed that it is no defense to crime that the defendant

may have mistaken Mary Alice Downing for some other person, or that the defendant may have been angry, or that he may have supposed himself wronged by some other person."

Among the foregoing instructions the appellant pinpoints the lifting of a portion (the felony murder rule) from K. S. A. 21-401 by instruction No. 8 and the concluding paragraph of that instruction. He contends after the court instructed upon 21-401, *supra*, in its entirety, it was not justified in lifting these words out of that particular section of the statute and advising the jury that if the appellant "committed an act even though he didn't even intend to commit the act that if he was in the perpetration of a felony they should find him guilty of first degree murder."

The appellant also complains of the second paragraph of instruction No. 19A, which he contends negates any defenses based upon mistakes or anger or the fact that the appellant had been wronged by anyone.

We shall pass these points momentarily and treat them under another specification of error.

The appellant's broadside attack upon the instructions generally is that the trial court "in his instructions leaned heavily toward encouraging the jury to find guilt as a matter of law, without regard to making a determination of fact." This objection seems to be hinged on the felony murder instructions given.

The appellant by his third specification of error alleges the trial court erred in refusing the pretrial motion to strike, the motion to discharge and the objections made on behalf of the appellant to Counts II, III and V of the information. In his brief he joins with this specification No. 4, which charges that the trial court erred in giving an instruction to the jury on first degree kidnapping, and specification No. 6 which charges that the trial court erred in giving an instruction on an attempt as it concerned first degree kidnapping.

The points raised by these specifications relate to appellant's theory of the law applicable in this case. We shall first consider Counts III and V which charge the appellant with attempted kidnapping in the first degree, the instructions relating thereto, and the jury's finding of guilty with respect to these counts.

In view of the evidence presented by the record, it is unnecessary to consider the legal theory upon which appellant objects to Counts III and V prior to trial.

The testimony of Augustus Wells, Lucretia Brown and Victoria Johnson in each instance was to the effect that a white automobile

being operated by a person unknown to them, but which was in fact the appellant, drove up to them at the side of the street, and they heard words to the effect "Get in the car" or "Get in;" that simultaneously with those words the gun was at the window of the automobile and was discharged in rapid fire succession, at close range.

Reason would suggest that at such close range either the appellant was an exceedingly bad shot or that he did not intend to hit anyone. Reason would further indicate that the bullets fired almost simultaneously with the words "Get in," before anyone could move away from the automobile or toward it, negated any thought or expectation of the appellant that such persons would get into the automobile in the face of a pistol being fired. In our opinion the words "Get in," or words of like effect when coupled with the immediate firing of the pistol constituted but one act—the felonious assault—and as a matter of law did not supply any evidence of an attempt to kidnap any of the persons assaulted.

On such failure of evidence the trial court erroneously instructed as to attempted kidnapping in the first degree (instructions Nos. 5 and 16), and the appellant's conviction on Counts III and V must be set aside.

The appellant's objection to Count II is so closely related to specifications Nos. 5 and 7 that we shall consider them together. Specifications Nos. 5 and 7 read:

"5. Did the court err in allowing the consideration by the jury and consequently the instructions allowing the possession of a pistol after the conviction of a felony to be considered by the jury as pertaining to what is commonly known as the felony murder rule or in connection with section 21-431 which is commonly called felonious assault?

"7. Did the court err in giving instruction No. 19A, making it mandatory upon the jury to convict the defendant of murder in the first degree under the felony murder rule?"

The foregoing specifications are referred to by the appellant as presenting the real meat of this entire lawsuit and particularly the appeal.

In this connection the appellant says it cannot be denied that he had in fact been convicted of a felony prior to this trial, nor can it be denied that on the occasion on which the events here involved occurred, he did have in his possession a pistol with a barrel less than twelve inches in length. By the same token, he contends, the state is not in a position to deny that it relied upon the above facts and tried this case upon the theory that the possession of the

pistol, after the prior felony conviction, constituted a felony during the perpetration of which a homicide was committed, thus bringing to bear the commonly known felony murder rule.

The appellant takes the position that the jury did not find him guilty of murder with deliberation, premeditation and malice aforethought—that the verdict "shows clearly that the jury found the Appellant guilty of murder in the first degree for killing Mary Alice Downing, while in the commission of a felony."

It should be noted the jury found the defendant "guilty of count two in the information, first degree murder *and* the killing of Mary Alice Downing while in the commission of a felony." (Emphasis added.)

Count II of the information in pertinent part charges that:

". . . on or about the 8th day of August, 1965, one ROBERT LEWIS MOFFITT did then and there unlawfully, feloniously, wilfully, deliberately, premeditatedly, and with malice aforethought, and while in the commission of a felony, kill and murder Mary Alice Downing with a dangerous and deadly weapon, a 7.65 Pistola Beretta, Serial No. 408474, being a pistol with a barrel less than 12 inches in length, by shooting Mary Alice Downing in the back of the head of which wounds she did die on August 8, 1965, in front of 1324 Wabash, Wichita, Sedgwick County, Kansas, . . ."

The finding of the jury in view of Count II as charged would suggest that it is double barreled—that the appellant was found guilty of premeditated murder and guilty of murder while in the commission of a felony, both of which under K. S. A. 21-401 constitute murder in the first degree.

A study of the verdict forms submitted to the jury upon consideration of the case discloses that four forms were submitted. The form adopted by the jury as its verdict on Count II has heretofore been quoted, using the expression, "first degree murder and the killing of Mary Alice Downing while in the commission of a felony." Another verdict form is worded identically except that the penalty was assessed at death. A third form submitted reads:

"We, the Jury, impaneled and sworn in the above entitled case, do upon our oath find the defendant guilty of count two in the information, first degree murder, deliberately, premeditatedly, and with malice aforethought, and assess the penalty at hard labor in the penitentiary."

The fourth form was to be used by the jury in the event it found the appellant not guilty of Count II in the information.

For purposes of this appeal, in view of the verdict forms submitted to the jury, we shall assume the appellant's construction of the jury's verdict on Count II is correct.

Prior to the selection of a jury counsel for the appellant moved the court to require the state to elect whether or not it relied upon deliberation, premeditation and malice aforethought for a conviction on Count II, or the theory that the appellant was in the perpetration of a felony, or attempt to perpetrate a felony at the time of the death of the victim. The court denied this motion.

It has been the basic contention of the appellant throughout the trial of this case, and upon appeal to this court, that the felony murder rule cannot possibly apply to the facts in the instant case.

Counsel for the appellant argue in their brief that it was known prior to the commencement of the trial the appellant herein was not acquainted with Mary Alice Downing, Lucretia Brown, Augustus Wells or Victoria Johnson. It is therefore argued the appellant could not have had any personal animosity toward them. Thus, it is argued, particularly with regard to murder in the first degree, the idea of premeditation, malice aforethought and deliberation is negated. Counsel for the appellant on their theory of the law therefore conclude that a requirement to elect at the trial would almost necessarily have reduced the charge in Count II to murder in the second degree.

Counsel for the appellant further argue when the evidence presented by the state bore out the fact that there was a complete lack of acquaintanceship between the appellant, the decedent, and the persons assaulted, the trial court should have discharged the appellant from first degree murder as it related to malice aforethought, premeditation and deliberation.

Upon the assumption that the appellant's interpretation of the jury verdict on Count II is correct, further consideration of premeditated murder, included in Count II of the charge and embraced within the evidence and the instructions, becomes immaterial.

K. S. A. 21-401 provides:

"Every murder which shall be committed by means of poison or by lying in wait, or by any kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration or an attempt to perpetrate any arson, rape, robbery, burglary, or other felony, shall be deemed murder in the first degree."

This law had its origin in the Territorial Laws of 1855 and was re-enacted in 1859. It subsequently became a part of the General Statutes in 1868, and a part of the Revised Statutes of 1923. During all of that time it retained its present form.

The foregoing statute on murder has been before the court on

numerous occasions for construction. In *State v. Keleher*, 74 Kan. 631, 87 Pac. 738, it was said:

"At the common law it was not essential to allege or prove the specific intention to kill, if the act from which death ensued was *malum in se* or done with a design to commit a felony. (1 Whart. Crim. Law, 10th ed., §120; 2 Bish. Crim. Law, 7th ed., §694.) Our statute defining murder in the first degree is identical with the Missouri statute, from which it was probably taken, and the same doctrine is there maintained as in Pennsylvania. (*The State v. Meyers*, 99 Mo. 113, 12 S. W. 516; *State v. Foster*, 136 Mo. 653, 38 S. W. 721.) Proof that a homicide was committed in the perpetration of a felony is held tantamount to the premeditation and deliberation which otherwise would be necessary to constitute murder in the first degree.

"The only essential difference between murder in the first degree and murder in the second degree is that the former is committed after deliberation and premeditation, which elements do not inhere in the lower grade of the crime; . . ." (p. 635.)

A similar statement was made in *State v. Roselli*, 109 Kan. 33, 198 Pac. 195, where the court said:

"On numerous occasions this court has adverted to the fact that the statute does not define murder, and that the basis of the legislation is murder at common law. For purpose of punishment murder is divided into two degrees, depending on presence or absence of deliberation and premeditation. Every murder committed by any kind of willful, deliberate and premeditated killing, is murder in the first degree. Use of poison, lying in wait, and killing in perpetrating or attempting to perpetrate arson, rape, robbery, burglary, or other felony, are statutory equivalents for the deliberation and premeditation essential to murder in the first degree. All other murders are murders in the second degree." (p. 35.)

The foregoing cases were affirmed and quoted in *State v. Turner*, 193 Kan. 189, 392 P. 2d 863, where the homicide was committed in the course of a burglary or robbery, and the defendant on trial was one who aided and abetted in the burglary or robbery.

Other cases dealing with the felony murder rule are *State v. Boone*, 124 Kan. 208, 257 Pac. 739; *State v. Jella*, 132 Kan. 509, 296 Pac. 350; and *State v. Pyle*, 143 Kan. 772, 57 P. 2d 93.

It should be noted that in each of the foregoing cases the felony being perpetrated in the course of which the homicide occurred was among those specifically enumerated in the statute, such as burglary or robbery. None has dealt with the words "or other felony."

It was recognized by this court in *State v. Severns*, 158 Kan. 453, 148 P. 2d 488, that authorities and decisions dealing with definitions of murder and manslaughter at the common law are not fully in

accord. But the court said where any such definitions are not in accord with our statutory provisions the latter must control.

The court in *Severns* was concerned with the first degree murder statute (21-401, *supra*) and said:

"The definition is subject to the criticism that it uses the word 'murder' to define itself, although it seems clear that the word is used as equivalent to the word 'homicide.' It does make it clear that any killing committed in the perpetration or any attempt to commit certain named crimes or other *felony*, is murder in the first degree. Under this section it has been held that the elements of the named crime or other felony 'must be so distinct from that of the homicide as not to be an ingredient of the homicide, convictable under an information charging the homicide as murder.' (*State v. Fisher*, 120 Kan. 226, syl., 243 Pac. 291.) . . ." (p. 457.)

In *State v. Fisher*, 120 Kan. 226, 243 Pac. 291, the defendant was charged in two counts, one designed to charge premeditated murder, and the other designed to charge felony murder, but the felony asserted was assault with intent to kill. The assault was the same act which resulted in the homicide. This was held improper on the ground the same act cannot be made the basis, first, of some other felony, and then that felony used as an element of murder in the first degree. The situation in *Fisher* is to be distinguished from the facts presently before the court.

A felony under our statutory definition is an offense punishable by death or confinement and hard labor in the penitentiary. (K. S. A. 62-104.)

Whether a criminal offense is a felony under our statutes is determined by the sentence which might lawfully be imposed, and not by the sentence actually imposed in a particular case. (*State v. Bowser*, 155 Kan. 723, 129 P. 2d 268, Syl. ¶ 1.)

The question posed is whether the felony created by K. S. A. 21-2611 (possession of a pistol after having been convicted of a felony), first enacted by the Kansas legislature in 1955, is embraced within the term "other felony" in K. S. A. 21-401.

The appellant takes the position that the felony created by 21-2611, *supra*, first enacted by the legislature one hundred years after the first territorial enactment in which the murder statute was adopted, does not fall within the meaning of the term "other felony."

He argues 21-2611, *supra*, does not require intent as a prerequisite for its application. (*State v. Wheeler*, 195 Kan. 184, 403 P. 2d 1015.) The appellant asks whether it is possible for a felony, which does not require any intent as an ingredient for its proof, to supply the

deliberation and premeditation required to elevate a homicide which occurs in the perpetration of such felony to murder in the first degree.

The appellant contends the words of a statute must be taken in a sense in which they were understood at the time the statute was enacted, and the statute must be construed as it was intended to be understood when it was passed. He urges that the maxim *ejusdem generis* ought to apply where general words follow an enumeration of special or more specific things—that the general words are to be construed as applying only to things of the same general kind as those specifically mentioned. Thus, it is argued, in 21-401, *supra,* the term "or other felony" ought to mean felonies which are *malum in se* or as felonies were known at the common law.

The appellant also relies on authorities which hold that the legislature in 21-401, *supra,* and K. S. A. 21-402 did not define the word "murder," but used the term in its technical common law sense. (*Craft v. State,* 3 Kan. 450; *State v. Keleher,* supra; and *State v. Roselli,* supra.)

The appellant contends the statutes from the state of Missouri and the state of Pennsylvania, from which Kansas took 21-401, *supra,* have been so construed. Among the cases cited by the appellant, *Commonwealth v. Exler, Appellant,* 243 Pa. 155, 89 Atl. 968, is the one upon which he relies most heavily. The appellant asserts that since our statute was taken from Pennsylvania and Missouri, the law of these states construing 21-401, *supra,* should apply.

In *Exler* the defendant committed statutory rape upon a girl twelve and one-half years old. She died from shock as a result of the act. It was held the statutory rape was not "rape" as the term was used at the common law and was not embraced within the first degree murder statute.

When 21-401, *supra,* first became the law of Kansas by enactment in the Territorial Laws of 1855, the territorial legislature defined the term "felony" as follows:

"The term 'felony,' when used in this act, or *any other statute,* shall be construed to mean any offense for which the offender, on conviction, shall be liable by law to be punished with death, or confinement and hard labor, and no other." (Terr. L. 1855, ch. 54, §36.) (Emphasis added.)

Thus, the term "felony" was specifically defined by the Territorial Laws of 1855 when 21-401, *supra,* first became the law of Kansas, and was broadened by definition to embrace the term "felony" when used in *any other statute.* Taking the words of the statute in the

sense in which they were understood at the time the statute was enacted, the term "other felony," as used in 21-401, *supra*, must be construed to apply to new felonies created by statute, the act not previously being felonious, as well as to common law felonies.

The court in *Severns* said the statute (21-401, *supra*) "does make it clear that *any killing* committed in the perpetration or any attempt to commit certain named crimes *or other felony*, is murder in the first degree." (p. 457.) (Emphasis added.)

The firearms control legislation of Kansas is set forth in Article 26, Chapter 21, of the Kansas Statutes Annotated. In 1955 the legislature apparently recognized that persons who had once committed a felony were dangerous to society and should not own, have in their possession, or under their control, concealable weapons. It therefore enacted K. S. A. 21-2611 which in part provides:

"It shall be unlawful for any person who has previously been convicted in this state or elsewhere of committing or attempting to commit murder, manslaughter (except manslaughter arising out of the operation of an automobile), kidnaping, mayhem, forcible rape, assault to do great bodily harm, or any other felonious assault, robbery, burglary, extortion, grand larceny, receiving stolen property, aiding escape from prison or unlawfully possessing or distributing habit-forming narcotic drugs or *cannabis sativa*, commonly known as marihuana, to own a pistol, or to have or keep a pistol in his possession, or under his control. . . ."

The word "pistol" was defined in K. S. A. 21-2610 to mean any firearm having a barrel less than twelve inches long.

That the legislature recognized certain persons as dangerous to society is further revealed by its enactment of K. S. A. 21-2613, which directs that any pistol found in the possession of or under the control of any person arrested for committing or attempting to commit any felony shall be seized and disposed of in like manner as provided in section five of the act.

The felony murder portion of California's first degree murder statute enumerates six specified felonies to which the first degree murder classification applies. Other felony murders are by court rule classified as murders in the second degree.

The Supreme Court of California has expressed the nature and extent of the felony-second-degree-murder rule in *People v. Ford*, 60 C. 2d 772, 36 Cal. Rptr. 620, 388 P. 2d 892 (1964), in the following language:

". . . A homicide that is a direct causal result of the commission of a felony inherently dangerous to human life (other than the six felonies enumerated in Pen. Code, §189) constitutes at least second degree murder. . . ." (p. 795.)

The foregoing statement was later affirmed in *People v. Williams*, 63 C. 2d 452, 47 Cal. Rptr. 7, 406 P. 2d 647 (1965).

The state of California has a gun law similar to Kansas. There the possession of a concealed firearm by any person who has been previously convicted of a felony constitutes a felony, and the Supreme Court apparently has seen no reluctance to invoke the felony-second-degree-murder rule where such felony forms its basis. In *People v. Robillard*, 55 C. 2d 88, 10 Cal. Rptr. 167, 358 P. 2d 295, 83 A. L. R. 2d 1086 (1960), the court said:

"Likewise, at the time defendant was stopped by the officer he was on probation from felony convictions in both the state and the federal courts. Since possession of a concealed firearm by any person who has been previously convicted of a felony is also a felony in this state (Pen. Code, §12021), the death of the officer would also automatically be at least second degree murder on this theory." (p. 98.)

A further indication that California has taken this position is disclosed by language in *People v. Ford*, supra, as follows:

". . . The evidence other than that related to the murder count amply supports the judgments of conviction of the felonies of kidnaping Roope and Mrs. Ford (Pen. Code, §207) and of possession of a concealable weapon by an ex-felon (Pen. Code, §12021, here determined to be a felony as defendant was sentenced therefor to state prison for the term provided by law). These latter crimes are by their nature continuing ones, and were still in the process of being committed when the killing of Officer Stahl took place. They are inherently dangerous to human life, and 'the killing had a direct causal relationship to the crime[s] being committed' (*People v. Robillard* (1960) 55 Cal. 2d 88, 98 [9] [10 Cal. Rptr. 167, 358 P. 2d 295, 83 A. L. R. 2d 1086]). It follows that under the rule just stated the homicide in the case at bench was, as a matter of law, at least murder in the second degree. . . ." (p. 795.)

Reference has previously been made to the case of *State v. Fisher*, supra, which holds in effect that the words "other felony" used in 21-401, *supra*, refer to some felony collateral to the homicide, and not to those acts of personal violence to the deceased which are necessary and constitute elements of homicide itself. They are merged in it and do not, when consummated, constitute an offense distinct from homicide.

In distinguishing the foregoing situation in a case similar to the one at hand, it was said in *People v. Hudgins*, 236 C. A. 2d 578, 46 Cal. Rptr. 199 (1965):

"As previously stated, appellant was sentenced for second degree murder and for violation of the Dangerous Weapons' Control Law, and it is contended that the two sentences were in violation of section 654 of the Penal Code, and the law as declared in *People v. McFarland*, 58 Cal. 2d 748 [26 Cal. Rptr. 473,

376 P. 2d 449]. This would be true if the two offenses were committed by one act or in a series of acts having but a single purpose, but such was not the case. The acts constituting the offenses were separable. Possession of the gun constituted one offense, and this was an act separate and apart from any use that was made of the gun, and would have been a completed offense even if no use had been made of it. Appellant was properly sentenced for both offenses." (pp. 587, 588.)

The significance of the California decisions is that they classify the felony with which we are here concerned (possession of a pistol after having been previously convicted of a felony) as one inherently dangerous to human life, although it is not necessary to prove as an ingredient of such offense any intention whatever.

To invoke the felony murder rule under our statute (21-401, *supra*) there must be proof that the homicide was committed "in the perpetration or an attempt to perpetrate" the felony. This means there must be a direct causal connection between the commission of a felony and the homicide.

We hold the felony committed under the felony murder rule to come within the term "other felony" in the first degree murder statute (21-401, *supra*) must be inherently dangerous to human life, and to sustain a conviction for murder in the first degree it must be shown that the homicide committed was a direct causal result of the commission of such felony.

It may seem harsh to hold the felony here, which requires no proof of intent, supplies the deliberation and premeditation to sustain a conviction for murder in the first degree by operation of a legal fiction of transferred intent, but it is not far removed from the situation where one who sits in an automobile outside waiting for an accomplice to burglarize a home, is guilty of murder in the first degree under the felony murder rule, when the accomplice kills the owner of the home in the perpetration of a burglary. (*State v. Turner*, 193 Kan. 189, 392 P. 2d 863.)

In the instant case the appellant was found guilty of having possession of a pistol after conviction of a felony, and in the perpetration of such felony the evidence discloses he used the pistol to commit the homicide and the felonious assaults with which he was charged. There was a direct causal relation between the commission of the felony, which was inherently dangerous to human life, and the homicide. There was also a direct causal relation between the commission of the felony and the felonious assaults.

It is no defense to the crime of murder in the first degree that the appellant may have mistaken Mary Alice Downing for some other person; or that the victims of the assault were unknown to the appellant; or that the appellant may have been angry; or that he may have supposed himself wronged by some other person.

The fact that the homicidal act was directed against one other than the person killed does not relieve the slayer of criminal responsibility. It is generally held that such a homicide partakes of the quality of the original act, so that the guilt of the perpetrator of the crime is exactly what it would have been had the assault followed upon the intended victim instead of another. (1 Wharton's Criminal Law and Procedure, Homicide, §193, p. 438.) The same rule applies where the felony murder rule is asserted to sustain a conviction for murder in the first degree or felonious assault.

We therefore hold the appellant has not shown that he has been prejudiced by the various rulings of the trial court and in the giving of instructions on Counts I, II, IV and VI.

The last specification of error assigned by the appellant concerns the giving of a supplemental instruction in answer to the jury's question on life sentence and parole possibilities after it had commenced deliberating on the case.

On this point the jurors were instructed, over objection, as follows:

"You have asked for a definition from the Court as to what constitutes life imprisonment.

"In this connection you are instructed that life imprisonment means exactly what it says; that is, imprisonment for life.

"The Constitution of the State of Kansas provides: 'The pardoning power shall be vested in the Governor under regulations and restrictions prescribed by law.' The Governor of the State has power to pardon or commute any sentence imposed upon any defendant. However, before such power may be exercised, notice and a right to be heard must be given to the trial court, the prosecuting attorney in the Court where conviction was had, and publicly by printed notice so that any person may appear, when application is made to the Governor and to the Parole Board to give their views and make whatever recommendations they desire before such action is taken. This power of the Governor is further limited and restricted as follows:

"'The Governor may, when he deems it proper and advisable, commute a sentence, in any criminal case, by reducing the penalty as follows: If in a capital case, to imprisonment for life, or for a term not less than ten years at hard labor.' K. S. A. 62-2220.

"Thus, the Governor may as above stated, commute to a sentence less than

life, but unless he under his constitutional and statutory authority so acts, there is no possibility of parole in this state from a life sentence."

Similar instructions were requested in *State v. Lammers*, 171 Kan. 668, 237 P. 2d 410, and the trial court orally instructed the jury in much the same manner as here. There the appellant was given the death sentence and complained that the statement was erroneous and prejudicial to him. The court held the point made by the appellant was not good. There is some question as to whether the court ruled squarely upon the point inasmuch as it assumed the basis of the appellant's objection was that the instruction given was not in writing as required by statute.

The foregoing instruction is the basis of an extended annotation in 35 A. L. R. 2d 769 entitled "Procedure to be followed where jury requests information as to possibility of pardon or parole from sentence imposed."

In criminal cases where the jury, in addition to determining the guilt, must also fix punishment the foregoing question is often presented. Assuming the possibility of future interference with the sentence imposed by pardon or parole is not a proper matter for the consideration of a jury faced with the task of determining a defendant's guilt and imposing punishment, the trial court is faced with a most embarrassing situation when a request is made for information as to the possibility of pardon or parole from any sentence imposed.

Various alternatives are available to the trial court: (1) To discharge the jury forthwith; (2) to inform it of the law upon the subject; or (3) to refuse to answer the question with the admonition not to consider the matter, coupled with a reference to or repetition of the instructions upon the assessment of punishment.

Various positions have been taken by the courts on this subject. Some rule that the court should refuse to answer the question; others hold, where a death sentence follows, the trial judge must be reversed because of his action in responding to the jury's inquiry. Others have held it to be error even though a death sentence was not imposed, and still others hold where the death sentence was not imposed the instruction given to the jury upon inquiry has not resulted in prejudicial error. (See 35 A. L. R. 2d 769 for cases.)

Assuming it was error for the trial court to give the supplemental instruction in the instant case, we cannot say after carefully reviewing the record that the appellant was prejudiced by the in-

struction in view of the fact that his sentence upon Count II was assessed at life imprisonment.

In view of the foregoing, the judgment and sentence on Counts I, II, IV and VI are affirmed, and as to Counts III and V, the convictions are reversed and the sentences respectively vacated.