No. 56,300

STATE OF KANSAS, *Appellee*, v. JAMES C. TURBEVILLE, *Appellant*.

(686 P.2d 138)

Opinion filed July 13, 1984.

*Ronald E. Wurtz*, of Topeka, argued the cause and was on the brief for appellant.

*C. William Ossmann*, assistant district attorney, argued the cause, and *Robert T. Stephan*, attorney general, and *Gene M. Olander*, district attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: This is an appeal in a criminal action from a jury verdict finding James C. Turbeville, defendant/appellant, guilty of attempted murder (K.S.A. 1983 Supp. 21-3301 and K.S.A. 21-3401), aggravated battery (K.S.A. 21-3414), unlawful possession of a firearm (K.S.A. 21-4204), kidnapping (K.S.A. 21-3402), and aggravated kidnapping (K.S.A. 21-3421). Turbeville contends the trial court erred in the admission of certain evidence, in giving certain instructions, and in imposing sentence. He also

challenges the sufficiency of the evidence to sustain the kidnapping convictions.

On September 14, 1981, Corjon Fournier and Art Butler were working at Jet TV Rental in Topeka, Shawnee County, Kansas. A man later identified as Turbeville entered the store. Ms. Fournier asked the man if she could help him. The individual produced a handgun and ordered both employees into an adjacent office of the store. Thinking the individual wanted to rob the store, Butler asked him if he wanted money and started to move toward the cash register. Butler was again ordered by the gunman to go into the office. Once inside the office, Butler and Fournier were ordered to lie down on the floor. The individual shot Mr. Butler several times and he fell to the floor across Ms. Fournier's legs. The gunman then took aim and shot the fallen Butler in the back. The assailant then turned and walked out of the store, closing the door to the office behind him. No property was taken. Butler was shot a total of six times, receiving wounds in the abdomen, lungs, heart and spine. Miraculously, he survived the assault.

An employee of a nearby bakery, Lonnie Nesvarba, had just arrived in a delivery truck when he noticed a person acting in a suspicious manner coming out of the Jet TV Rental store. The man had his hand in the pocket of his coat and kept looking back and forth as if to see if he were being watched. The man walked to the corner of the building and then turned and ran down an alley. When Nesvarba saw a police officer arrive at the store, he got out of his truck and went to the store. When he determined someone had been shot inside the Jet TV Rental store, Nesvarba gave police a description of the person he had seen leaving the store.

The police had no suspects in the shooting. In May of 1983, acting on a tip, an agent for the Kansas Bureau of Investigation placed a picture of Turbeville in a photographic lineup and showed the photographic array to the three witnesses. Butler and Fournier positively identified Turbeville as the gunman who had shot Butler. Nesvarba positively identified Turbeville as the man he had seen leaving the store. At the trial, following Turbeville's arrest, the three witnesses again positively identified Turbeville as the man they had observed.

Joel Vashey, an inmate at the Shawnee County Jail, shared a

cell with Turbeville prior to Turbeville's trial. Vashey testified that during the time he and the defendant shared the cell at the jail, the defendant made various incriminating statements relating to the shooting. At one time Turbeville told Vashey, "You know, I really did this; but I flew in; and I flew out; and nobody ever knew it." Turbeville also stated that he only did it "as a favor for Don." On another occasion, Turbeville told his cellmates that a newspaper account of the shooting indicating Butler was shot twice in the back and once in the front was incorrect. He said that instead "the man was shot three times in the front and twice in the back with a .25 automatic."

At the trial Turbeville, testifying on his own behalf, stated that he was living with his wife in Independence, Missouri, at the time of the shooting and that he had never been to Topeka before being brought there after his arrest. At the time of the shooting, he did not own a car. Turbeville's wife testified she was with her husband the entire day of the shooting. The jury found Turbeville guilty of attempted murder, aggravated battery, unlawful possession of a firearm, kidnapping, and aggravated kidnapping.

Turbeville first contends the attempted murder and aggravated battery convictions are multiplicitous. The defendant's motions made during trial to require the prosecution to elect between the two charges, attempted murder and aggravated battery, were denied by the trial court. Turbeville directs the court's attention to *State v. Garnes*, 229 Kan. 368, 373-74, 624 P.2d 448 (1981), in which it was held that the charges of aggravated battery and attempted murder based upon the one act of stabbing the victim were multiplicitous. In this case, the charges of attempted murder and aggravated battery were both based on a single act. There is no question the charges arose out of the same overt act — the shooting of Art Butler. They are clearly multiplicitous under our holding in *Garnes*. The defendant's conviction and sentence on the aggravated battery charge should be set aside.

Turbeville next contends the trial court erred in allowing Joel Vashey to testify about threats made against Vashey while in jail. The prosecutor asked Vashey why he was currently in protective custody in the jail. Vashey replied he had received threats that if he went to Lansing he "wouldn't be coming back out," which he interpreted to mean he would be killed. Defense counsel ob-

jected to these statements as being hearsay. The trial court overruled the objection and allowed the prosecutor to ask who had made the statements. Vashey testified another inmate had made the threats. The trial court then ruled the testimony concerning the threats was hearsay and instructed the jury to disregard it. Turbeville contends this evidence was highly prejudicial to his right to a fair trial because it permitted the jury to infer the appellant was somehow responsible for the threats.

Although the testimony was inadmissible hearsay and therefore constituted error, reversal is not required. The defendant is entitled to a fair trial, but not a perfect one. The erroneous admission of evidence during a trial does not require reversal in every case. A conviction is to be reversed only where the erroneous admission of evidence is of such a nature as to affect the outcome of a trial so as to amount to a denial of substantial justice. *State v. Ambler,* 220 Kan. 560, 564, 552 P.2d 896 (1976); *State v. Farris,* 218 Kan. 136, 140, 542 P.2d 725 (1975); K.S.A. 60-2105. Whether inadmissible testimony constitutes harmless or reversible error depends upon particular evidence and the circumstances of the case in which the question arises. *State v. Bradford,* 219 Kan. 336, 548 P.2d 812 (1976). Where evidence of guilt is of such direct and overwhelming nature that it can be said that erroneous admission of other evidence could not have affected the result of trial, such admission is harmless error. *State v. Sullivan & Sullivan,* 224 Kan. 110, 118, 578 P.2d 1108 (1978); *State v. Thompson,* 221 Kan. 176, Syl. ¶ 6, 558 P.2d 93 (1976).

There is no evidence in the record to indicate the improper line of questioning was made intentionally or in bad faith by an inexperienced legal intern under the supervision of a deputy district attorney. The testimony was elicited to support Vashey's credibility by indicating he was unafraid to tell the truth. That testimony did not implicate the defendant in any crimes. Nothing was stated by Vashey from which the jury could infer the threats came from the defendant. The evidence of Turbeville's guilt was so overwhelming it is unlikely that the testimony concerning the threats made against Vashey by a third person affected the result of the trial. Butler, Fournier and Nesvarba all positively identified the defendant from the photographic lineup and at trial. In addition, Vashey testified concerning statements made by the defendant while in jail which implicated Turbeville

in the crimes. The trial judge correctly admonished the jury to disregard the hearsay testimony. Such admonitions normally cure any prejudice resulting from the improper admission of evidence. *State v. Mick,* 229 Kan. 157, Syl. ¶ 3, 621 P.2d 1006 (1981); *State v. Thompson,* 221 Kan. at 182. Under the circumstances of this case, the admission of this testimony was harmless error.

Turbeville complains that the instructions defining the offenses of kidnapping and aggravated kidnapping did not conform to the complaint. In Count 4 of the complaint, the defendant was charged with kidnapping Fournier by force or threat with the intent to facilitate the commission of a crime, or to inflict bodily injury, or to terrorize the victim. In Count 5 the defendant was charged with aggravated kidnapping of Butler by force or threat with the intent to facilitate the commission of a crime, or to inflict bodily harm. The court instructed the jury that to establish the kidnapping and aggravated kidnapping charges, the State had to establish that the taking and confining of Fournier and Butler was done "with intent to hold such person to inflict bodily injury or to terrorize the victim, or another, to facilitate flight or the commission of any crime." The language of the instruction was taken from K.S.A. 21-3420(*b*) and (*c*) which define separate elements of kidnapping. Defendant complains the instructions broadened the scope of the charges alleged in the complaint by adding the alternative intents "to terrorize another" and "to facilitate flight" to the kidnapping charge, and the alternative intents "to terrorize the victim or another" and "to facilitate flight" to the aggravated kidnapping charge. He contends this provided additional alternative theories under which the jury could find guilt and violated the principle of due process that a defendant must be accurately informed of the nature of the charges against him.

It is generally the rule that instructions should be confined to the charges contained in the information and should not be broader or narrower than the information. Instructions given in violation of the rule, however, have been excused in cases where the substantial rights of the defendant have not been prejudiced. See *State v. Kincade,* 207 Kan. 442, 445, 485 P.2d 1385 (1971); *State v. Booker,* 197 Kan. 13, 15, 415 P.2d 411 (1966). Here it is true the instructions on the charges of kidnapping and aggra-

vated kidnapping were broader than how those offenses were charged in the information. However, it does not appear the defendant's substantial rights were prejudiced in any way by this error. The language contained in the instructions was taken from K.S.A. 21-3420(*b*), "[t]o facilitate flight or the commission of any crime" and (*c*) "[t]o inflict bodily injury or to terrorize the victim or another" which define the separate types of intent by which the taking or confining may have been committed. From the facts presented at trial, the instructions as given were entirely supported by the evidence. The defendant was fully apprised of the nature of the charges and was not misled in preparing his defense by the way the charges were described in the information. Turbeville presented an alibi defense and does not indicate how his trial strategy would have been different had the language contained in the instruction been included in the information. The language contained in the court's instruction did not charge an additional crime, but stated several methods, or in this case different types of intent under (*b*) or (*c*), by which the kidnappings could be committed. Under these circumstances any error in the instructions was harmless error.

Turbeville next contends the evidence was insufficient to establish there was a "taking or confining" of the victims to support the kidnapping and aggravated kidnapping convictions. Defendant contends the State failed to prove the movement of the victims from the display area of the store to the office area was in any way significant in assisting the assailant to more easily commit the crime or escape detection. He maintains the movement of the victims to the office area was merely incidental to his intent to commit aggravated battery or attempted murder.

In *State v. Buggs*, 219 Kan. 203, 214, 547 P.2d 720 (1976), this court held our kidnapping statute, K.S.A. 21-3420, requires no particular distance of removal, nor any particular time or place of confinement. Rather, "it is still the fact, not the distance, of a taking (or the fact, not the time or place, of confinement) that supplies a necessary element of kidnapping." 219 Kan. at 214. If the taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement (a) must not be slight, inconsequential and merely incidental to the other crime; (b) must not be the kind inherent in the nature of the other crime; and (c)

must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection. 219 Kan. at 216. In the *Buggs* case, it was held that where victims were forced to move from a parking lot to the inside of a store, such movement facilitated the commission of the robbery and rape by substantially reducing the risk of detection. Such movement constituted the crime of kidnapping. 219 Kan. at 216-17.

In *State v. Brooks*, 222 Kan. 432, 435, 565 P.2d 241 (1977), during a robbery of a hardware store, three occupants of the store were herded to the rear of the store and bound with tape while a fourth occupant was bound and left confined in the restroom. The *Brooks* court stated:

"Such acts were not a necessary incident to or part of the crime of aggravated robbery. That offense could have been completed without any movement or restraint of the occupants of the store."

The defendant's conviction for kidnapping was proper.

In *State v. Weigel*, 228 Kan. 194, 198-99, 612 P.2d 636 (1980), when the defendant forced the bank employees into a bank vault and attempted to lock the vault door for the purpose of permitting the defendant to flee the scene, he committed the crime of kidnapping. A similar conclusion was reached in *State v. Nelson*, 223 Kan. 572, 574, 575 P.2d 547 (1978), where four customers and a waitress were ordered into an unlocked refrigerator during the robbery of a restaurant.

The facts of this case fall squarely under the guidelines of *State v. Buggs*, 219 Kan. 203. Fournier and Butler were ordered from the front display area of the store into an adjacent office located at the back of the store. These acts were not a necessary incident to or part of the crimes of attempted murder or aggravated battery. Those crimes could have been accomplished in the front part of the store where Turbeville first encountered the employees. The movement from the front of the store, where the individuals could be observed by passersby on the street, to the office in the back of the store, substantially reduced the risk of detection. Turbeville, in addition, closed the door to the office where the shooting took place as he was leaving, helping to prevent the victims from observing his means and direction of escape. The evidence presented was sufficient to establish the crime of kidnapping. This point is without merit.

The defendant contends the trial court erred in failing to specify the length of sentence for each crime of which he was convicted and later modifying the sentence imposed when he was not present. At the hearing for sentencing, Turbeville was allowed to make a statement. After Turbeville's statement, the trial court imposed sentence in the following manner:

"On the A felony I am going to impose life sentence. On the B felony I am going to impose a, a 15 years to life. On the two C felonies I'm going to impose five to 20 years. On the D felony I am going to impose three to ten years."

Upon the State's request to invoke the Habitual Criminal Act (K.S.A. 1983 Supp. 21-4504), the court doubled the minimum sentences on the B felony to 30 years and on the two C felonies to 10 years. (The A felony, aggravated kidnapping, had no minimum sentence, so was not enhanced, and the D felony, possession of a firearm, the parties agreed was exempt from enhancement.) The court ordered all sentences to run concurrently. After the defendant had departed with the sheriff, it was brought to the court's attention that sentence had mistakenly been imposed on two C felonies and one B felony. Actually Turbeville had been convicted by the jury of two B felonies (attempted murder and kidnapping) and one C felony (aggravated battery). A conference was held by the trial court without the defendant being present. Upon the recommendation of the prosecutor and defense counsel, the sentence of 10 to 20 years erroneously imposed upon the mistaken C felony was instead imposed upon the B felony of attempted murder, without enhancement. Turbeville's actual length of sentence, therefore, remained the same as that imposed by the judge while defendant was present at the sentencing hearing.

A judge had wide latitude in fixing the punishment for crimes. The defendant does not assert that the trial court could not have appropriately fixed the penalty in the first instance. Nor has the claim been advanced that the sentence imposed was excessive in light of the defendant's prior conduct and the circumstances of the commission of these particular offenses. The defendant merely claims the sentencing judge had no jurisdiction to modify the sentence imposed without the defendant being present.

In the past we have approved the correction of the original journal entry because of mere formal or clerical errors by a nunc pro tunc order in the absence of the defendant. *Kiser v. State*,

196 Kan. 736, 413 P.2d 1002 (1966). The prisoner was in no way prejudiced by the faulty journal entry since the sentencing judge had properly pronounced the sentence imposed in the presence of the defendant. The misdescription of an offense in the journal entry constituted an irregularity which did not affect the validity of the sentence imposed.

The necessity of the defendant's presence at the time a sentence is modified has received the attention of this court numerous times. In *State v. Baxter*, 41 Kan. 516, 21 Pac. 650 (1889), the defendant was convicted of a misdemeanor and sentenced to pay a fine and costs. The following day, in the defendant's absence, the court entered an order that he be committed until the fine of $1.00 and costs were paid. The defendant contended his absence at the time the commitment order was made rendered the judgment invalid. This court stated the imprisonment was not part of the punishment imposed. The objection of the defendant, had he been present, would have been unavailing. The statute expressly required that after a judgment of fine and costs was rendered, a defendant be committed until the judgment was paid in full.

The defendant's right to be present does not encompass proceedings before the court involving matters of law. In *State v. Mantz*, 222 Kan. 453, 463, 565 P.2d 612 (1977), the presence of the defendant was not required where the court and counsel, in the absence of the defendant, discussed instructions. In *State v. Sanders*, 227 Kan. 892, 893-94, 610 P.2d 633 (1980), the defendant's presence was not required at a conference discussing motions in limine. Similarly, in *State v. Nelson*, 223 Kan. 251, 253, 573 P.2d 602 (1977), during an evening recess in the trial, and outside the presence of the defendant, a juror was granted permission to visit a sick relative. In *State v. Garcia*, 233 Kan. 589, 664 P.2d 1343 (1983), during trial, the court was concerned with the defendant's ability to assist in his defense. The court continued the trial in order to have the defendant examined to determine if he was competent to stand trial. Outside the presence of the defendant, the jury was informed it was necessary to continue the trial. We approved the action of the trial judge.

K.S.A. 22-3405 provides a defendant in a felony case shall be present at every stage of trial including the imposition of sentence. See *State v. Fennell*, 218 Kan. 170, 176-77, 542 P.2d 686

(1975). In general a defendant's statutory and constitutional rights to be present are violated only if the defendant is absent when the jury is hearing the case or when he is prevented from attending such other proceedings where his presence is essential to a fair and just determination of a substantial issue.

In a legal sense, "sentence" is synonymous with "judgment" and denotes the action of a court of criminal jurisdiction formally declaring to the defendant the legal consequences of the guilt which he has confessed or of which he has been found guilty. *State v. Woodbury*, 133 Kan. 1, 298 Pac. 794 (1931).

In *Roberts v. State*, 197 Kan. 687, 421 P.2d 48 (1966), Roberts pled guilty to charges of burglary in the third degree and grand larceny. He was sentenced to the state penitentiary for a term of not less than five nor more than ten years for the crime of burglary, and not less than one nor more than five years for the larceny, both sentences to run concurrently. After his incarceration in the penitentiary it was determined that Roberts had been improperly sentenced for burglary. Roberts' retained counsel and the deputy county attorney appeared before the district court for the purpose of correcting the erroneous sentence previously imposed. The original sentence was set aside, and a new and concurrent sentence for burglary of not less than one nor more than five years was imposed on each charge to run concurrently.

Six months later Roberts attacked the validity of the new sentence by a 60-1507 motion. Roberts claimed he was not personally present in court at the time of resentencing. The trial court denied the motion and Roberts appealed. The *Roberts* court determined the provisions of K.S.A. 62-1507 (Corrick) (now 22-3405) contemplate that the pronouncement of sentence is the judgment of the court, and if the conviction be for an offense punishable by imprisonment, it is mandatory that the defendant be personally present at the time sentence is pronounced. In a criminal prosecution where an erroneous original sentence of imprisonment has been vacated and set aside, a new sentence of imprisonment imposed in the defendant's absence is void, for, under such circumstances, it is mandatory that the defendant be personally present in court at the time of resentencing. A void sentence may be corrected by the substitution of a new and valid sentence, and to accomplish such purpose, a prisoner shall be remanded by the reviewing court to the district court for further proceedings.

*Roberts* was followed by *Aeby v. State,* 199 Kan. 123, 427 P.2d 453 (1967). After a jury trial Aeby was convicted of two felonies and a misdemeanor. He was sentenced by the court on Count 1 of burglary to a term of not less than one nor more than five years; on Count 2 of petty larceny to a term not to exceed one year in the county jail, Count 1 and Count 2 to run concurrently; and on Count 3 of burglary to a term of not less than one nor more than five years, to run consecutive to Count 1. The court then mistakenly sentenced the defendant to a term of not less than 15 years nor more than 25 years by virtue of being a habitual criminal, such sentence to run consecutive with Counts 1 and 3. While in prison, Aeby moved to set aside the sentence for being a habitual criminal. The sentencing judge, realizing he had erred, modified the sentence by a nunc pro tunc order. The sentence for being a habitual criminal was vacated and Count 3 modified to 15 to 25 years under the Habitual Criminal Act. The *Aeby* court, following the guidelines of *Roberts,* required that the void sentence be set aside and a new sentence imposed with the defendant personally present in court at the time of resentencing.

In *State v. Coy,* 234 Kan. 414, 672 P.2d 599 (1983), the defendant was convicted of rape and aggravated burglary. The sentencing judge imposed a sentence in both counts in excess of the statutory minimum. After Coy was imprisoned, the sentencing judge realized he had erred; without notice to the defendant he entered an ex parte order correcting the minimum sentence. Following *Roberts* and *Aeby,* this court held that in a criminal prosecution where an erroneous original sentence of imprisonment has been vacated and set aside, a new sentence imposed in the absence of the defendant is void. Under such circumstances it is mandatory that the defendant be present in the court at the time of sentencing.

Sentencing an individual after a conviction is difficult and complex. A high degree of exactitude is required in the pronouncement of the sentence. The sentence should be definite and certain. Sentencing should clearly reveal the intention of the court and conform to the statutory limitations. Where a sentence is void, the presence of the defendant is required for the sentencing court to correct the void sentence. Where the trial court has corrected the void sentence without the defendant being

present, we, as a reviewing court, must remand the case with directions to impose a lawful sentence in the defendant's presence.

Next the defendant alleges the trial court erred in enhancing his sentence under the Habitual Criminal Act without requiring proof of prior convictions at the sentencing hearing. This point is entirely without merit. K.S.A. 1983 Supp. 21-4504(e) provides a trial court may, upon motion of the prosecuting attorney, enhance the sentence of a defendant who is convicted of two or more felonies "only after the court finds from competent evidence the fact of former convictions for felony committed by the prisoner, in or out of the state."

During trial evidence of prior felony convictions from Missouri was introduced and admitted as exhibits by the State for the purpose of establishing one of the elements required to prove the charge of unlawful possession of a firearm. These exhibits were referred to in a notice of intent to invoke the Habitual Criminal Act which the State filed over a month prior to the sentencing hearing. The exhibits were not reintroduced at the sentencing hearing since they had been admitted into evidence at trial. An objection was raised to the admission of the exhibits at trial on the ground there was no evidence that the defendant was the person involved in the prior felonies. The trial court overruled this objection, finding there was sufficient evidence that Turbeville was the same person involved in the prior felonies. That finding was not challenged on appeal. In addition, during trial Turbeville testified concerning his prior Missouri felony convictions. There was sufficient competent evidence of the defendant's prior felony convictions from which the court could properly impose sentence under the Habitual Criminal Act.

As his final point, the defendant contends the State should not have been allowed to enhance the sentences under the Habitual Criminal Act with the same evidence of prior felonies used to prove the elements of the charge of unlawful possession of a firearm. He contends that, under K.S.A. 1983 Supp. 21-4504(d), evidence of a prior conviction is "used up" if it is used to prove the elements of a crime charged and cannot be used again to enhance the sentences of other crimes charged. This provision reads:

"The provisions of this section shall not be applicable to:

"(1) Any person convicted of a felony of which a prior conviction of a felony is a necessary element . . . ."

The language of this provision is clear and unambiguous. It provides only that a conviction of a felony, *i.e.*, unlawful possession of a firearm, may not be enhanced where evidence of a prior conviction is a necessary element of that conviction. There is no prohibition, however, upon enhancing the sentences of other convictions with evidence of prior felonies which formed an element of a separate conviction. Turbeville's conviction on the charge of unlawful possession of a firearm was not enhanced because of this provision. The other convictions were properly enhanced because of the defendant's prior Missouri felony convictions. This point is without merit.

The convictions of attempted murder, unlawful possession of a firearm, kidnapping and aggravated kidnapping are affirmed. The conviction and sentence for aggravated battery is set aside. Because the void sentences were modified without the defendant being present, the case is reversed and remanded to the district court with instructions to resentence defendant, affording the defendant an opportunity to be present and heard at the time of resentencing.

HOLMES, J., not participating.