No. 64,846

STATE OF KANSAS, *Appellant,* v. CARL EUGENE LEONARD, *Appellee.*

(807 P.2d 81)

Opinion filed March 1, 1991.

*Edwin A. Van Petten,* deputy attorney general, argued the cause, and *JaLynn Copp,* assistant attorney general, was with him on the brief for appellant.

*Jessica R. Kunen,* chief appellate defender, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This case addresses: (1) the application of the felony-murder doctrine and (2) the requirement of statewide interest for questions reserved on appeal by the State.

The State charged Carl Eugene Leonard with one count of first-degree felony murder (K.S.A. 1989 Supp. 21-3401) and multiple counts of aggravated assault (K.S.A. 21-3410).

The trial court dismissed the felony-murder count on the grounds that felony murder cannot be supported by the underlying felony of aggravated assault. The State then amended the information to charge second-degree murder (K.S.A. 21-3402).

A jury found Leonard guilty of involuntary manslaughter (K.S.A. 21-3404) and six counts of aggravated assault. The State appeals: (1) the dismissal of the felony-murder count; (2) the overruling of its motion in limine to limit any reference to the decedent smoking marijuana; and (3) the overruling of its objection to the second-degree murder instruction given by the trial court.

Our jurisdiction arises under K.S.A. 22-3602(b), appeals by the prosecution.

We find no error. We affirm the trial court on the felony-murder issue and dismiss the State's appeal on the remaining issues.

## Facts

On October 16, 1988, John C. "Chuck" Huffman died as a result of being run over by a semi-truck driven by Leonard. Several witnesses testified to the events leading up to Huffman's death.

On October 15, 1988, a party was in progress at the home of Joe Sullivan in Weir, Kansas. During the evening, the party ran out of beer. The existence of a keg of beer at the James Curtis residence, also in Weir, was discussed. Huffman and two others from the Sullivan party went to the Curtis party to ask about the keg. They inquired about combining the parties and offered to buy the keg. An argument between a Sullivan party goer and a Curtis party goer developed. Huffman was not involved.

The trio returned to the Sullivan party. Almost everyone at the Sullivan party decided to attend the Curtis party. At the Curtis party, a fight began between the two party goers who had argued earlier.

Leonard, the defendant, was at the Curtis party. He testified that he helped break up the fight. Leonard also testified that he had an argument with one of the Sullivan party goers. The Sullivan party goers left the Curtis party, moving on to the Weir City Park.

A guest at the Curtis party observed Leonard enter his truck with a saw in his hand. The guest overheard Leonard say he was going to go "kill the son of a bitches."

Mary Thornton, Leonard's mother-in-law, was also at the Curtis party. She saw Leonard as he left the Curtis party and testified Leonard told her, "I'm going to kill the son of a bitch."

Shortly after arriving at the park, the Sullivan party goers saw Leonard drive by in his semi-truck headed in the direction of the Sullivan home. The party goers then returned to the Sullivan home.

The Sullivan home was located next to a large parking lot. According to Dane Uber, Leonard was outside of his truck with a tire tool, calling out Uber's name. Uber and Jim Sullivan left to go back to the park, but they turned back when they noticed the Sullivan party goers driving toward the Sullivan home. Eventually, the Sullivan group parked their cars and gathered at the parking lot.

Jim Sullivan testified that Leonard had a hand saw and a crowbar. According to Sullivan, Leonard called out Uber's name and said that he (Leonard) "wanted to kick his [Uber's] ass to see how bad he was." Leonard also hit the back of the semi-truck with the crowbar and yelled for the people in the Sullivan house to come out so he could "whip them."

Several witnesses testified that Leonard climbed back into his truck and began to drive back and forth on the street adjacent to the parking lot. The group from the Sullivan party was standing in the parking lot.

The Sullivan party goers were yelling and cursing at Leonard. They also threw rocks at his truck. One Sullivan party goer shot an arrow at the truck. Another person in the Sullivan group jumped on the back of the truck and pulled on the air hoses in an attempt to disable the truck.

Eventually, Leonard stopped his truck for several minutes at the end of the road. He then drove down the road, turned on his lights, and entered the parking lot, heading toward the group of people gathered there. Everyone moved out of the truck's path except Huffman, who was struck and killed.

According to Leonard's own testimony he: (1) was drunk; (2) had consumed several beers; (3) had smoked a marijuana cigarette; (4) had injected cocaine; (5) was not thinking straight; (6) did not intend to injure anyone; (7) did not know that he had run over someone until he was told later that night; and (8) did not recall

saying, "I'm going to kill the son of a bitch." Leonard stated he might have made the statement, but it is "just an expression."

<u>Merger</u>

The State charged Leonard with first-degree murder committed "while perpetrating a felony, to-wit: Aggravated assault of " numerous named individuals other than Huffman in the group gathered in the parking lot.

Leonard filed a motion to dismiss the felony-murder charge on the grounds that the underlying felony of aggravated assault merged with the felony murder. The trial court granted the motion.

The trial court found that *State v. Fisher,* 120 Kan. 226, 243 Pac. 291 (1926), controlled the felony-murder issue in the case at bar. We agree.

In *Fisher,* the defendant shot a rifle at a car, killing one of the occupants. The information charged Fisher with first-degree felony murder of the occupant while attempting to perpetrate assault with a deadly weapon on the other six occupants of the car. Fisher was convicted of first-degree murder based upon the felony-murder rule. We reversed, holding that the elements constituting the underlying felony must be so distinct from the homicide as not to be an ingredient of the homicide.

*Fisher* has been noted with approval in *State v. Prouse,* 244 Kan. 292, 300-01, 767 P.2d 1308 (1989) (Holmes, J., concurring), and *State v. Lucas,* 243 Kan. 462, 466-67, 759 P.2d 90 (1988), aff'd on rehearing 244 Kan. 193, 767 P.2d 1308 (1989).

The State unsuccessfully attempts to distinguish *Fisher.* The State argues that *Fisher* involved a case of general intent with no particular intended victim, while the case at bar involves specific intent to assault an unknown victim. This specific intent, the State contends, is proven by testimony of Mary Thornton, who stated that Leonard said, "I'm going to kill the son of a bitch." However, the State admits that it cannot prove who the intended victim was.

The State relies on the following language in *Lucas:*

"First-degree premeditated murder (or any lesser degree of homicide) could, of course, constitute the requisite underlying felony where, for instance, a defendant kills victim B during his or her commission of a homicide on

victim A. The homicide of victim A could be the underlying felony for a felony-murder charge for the death of victim B." 243 Kan. at 466.

The State asserts that the merger doctrine does not apply if the intended victim of the underlying felony is different from the actual victim. The State's arguments under the facts of Leonard's case are not persuasive.

Leonard argues that the felony-murder rule is not intended to apply to assaultive or homicidal behavior. The assaults against the other people in the crowd were not distinct from the homicide. Thus, the aggravated assault charges merged with the felony-murder charge.

Leonard disagrees with the State's analysis of the language in *Lucas*. He asserts that a defendant may be found guilty of first-degree premeditated murder of victim B when victim B is killed during the commission of a homicide on victim A; however, the defendant should not be found guilty of felony murder. Leonard contends that the doctrine of transferred intent would apply in that hypothetical situation. Under the transferred intent doctrine, the intent to kill victim A would transfer and serve as the basis for murder charges for victim B. See *People v. Lovett*, 90 Mich. App. 169, 283 N.W.2d 357, *lv. to appeal denied* 407 Mich. 884 (1979), 8 A.L.R.4th 952; 2 Wharton's Criminal Law § 144 (14th ed. 1979).

We need not address the implications of the transferred intent doctrine. *Fisher* controls.

The issue in the instant case is whether the underlying felony of aggravated assault is so distinct from the homicide as not to be an ingredient of the homicide. "Time, distance, and the causal relationship between the underlying felony and the killing are factors to be considered in determining whether the killing is a part of the felony." *Lucas*, 243 Kan. 462, Syl. ¶ 4.

Leonard's *one act* of driving the semi-truck through the crowd is the basis for both charges. This one act is not separated in time and distance. The one act caused the killing. Because there was only one act, the elements of the aggravated assault are not distinct from the homicide. The aggravated assault charges merged with the felony-murder charge.

The trial court did not err in dismissing the felony-murder charge.

Questions Reserved—The Requirement of Statewide Interest
A. The State's Motion in Limine

The State called Prudence Huffman, the victim's mother, as its first witness. Mrs. Huffman testified that she and Chuck (her son) watched TV the entire evening of October 15, 1988, until he left at 9:30 p.m. The State asked if any alcoholic beverages were consumed. Mrs. Huffman stated that they never had alcoholic beverages in her home.

After the State's second witness began testifying, the State moved to prevent the admission of testimony regarding Chuck Huffman's consumption of illegal substances. The trial court overruled the motion in limine, stating the testimony would be evidence of the surrounding circumstances. The trial court noted that the State introduced evidence of the surrounding circumstances through Mrs. Huffman. The trial court instructed Leonard's counsel: "I don't want you to get into a collateral trial here of trying the decedent."

The State asserts that the trial court erred in overruling the motion. The State contends that the probative value of the testimony is outweighed by its prejudicial effect.

Leonard counters the State's position with three arguments. First, Leonard contends, the State did not preserve the issue for appeal because the State did not object to the testimony that Huffman had smoked marijuana when it was presented; second, the issue is not of statewide interest; and third, the trial court did not err in allowing the testimony because the testimony was admissible under the concept of res gestae. Each of these arguments has merit. We choose, however, to resolve the issue by holding it is not of statewide interest.

Questions reserved by the State in a criminal prosecution will not be entertained on appeal merely to demonstrate whether error has been committed by the trial court. Generally, this court has accepted appeals on questions reserved by the State where the appeals involve questions of statewide interest important to the correct and uniform administration of the criminal law, *State v. Holland,* 236 Kan. 840, 841, 696 P.2d 401 (1985), and the interpretation of statutes, *State v. Kopf,* 211 Kan. 848, 508 P.2d 847 (1973).

The relevance, probative value, and prejudicial effect of the testimony that Huffman smoked marijuana depends on the specific facts of this case. The admission of this evidence is within the discretion of the trial court. Resolution of this issue will not provide a helpful precedent; therefore, we do not entertain it. *Holland*, 236 Kan. at 841.

## B. Instruction—Second-Degree Murder

The State proposed the following instruction:

"The defendant is charged with the crime of murder in the second degree. The defendant pleads not guilty.

"To establish this charge each of the following claims must be proved:

"1. That the defendant killed JOHN C. HUFFMAN;

"2. That such killing was done maliciously; and

"3. That this act was done on or about the 16th day of October, 1988, in Cherokee County, Kansas."

The trial court instructed on second-degree murder from PIK Crim. 2d 56.03.

The State objected. The trial court overruled the objection. The State reserved the issue for appeal.

The State argues that PIK Crim. 2d 56.03 fails to adequately instruct the jurors in the application of K.S.A. 21-3402, second-degree murder. The State contends that K.S.A. 21-3402 does not require specific intent to kill the particular victim.

Leonard asserts that this issue should not be entertained because it lacks statewide interest, citing *State v. Kopf*, 211 Kan. 848. We agree. *Kopf* involved the trial court's refusal to submit requested instructions.

In the case at bar, the jury instruction given mirrored the charge set forth in the amended information; thus, resolution of this issue depends upon the facts of this case. Therefore, we do not believe the question should be entertained for appellate review.

The trial court is affirmed on the felony-murder issue. The appeal is dismissed as to the other issues.

HOLMES, C.J., and HERD, J., dissenting on the felony murder issue.