No. 71,688

STATE OF KANSAS, *Appellee*, v. QUILAN Z. JONES, *Appellant*.
(896 P.2d 1077)

Opinion filed June 2, 1995.

*Wendy L. Rhyne Slayton*, special appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the brief for appellant.

*Debra S. Peterson*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This is a direct appeal by the defendant, Quilan Z. Jones, from his jury conviction of one count of first-degree murder. He was sentenced to life imprisonment.

On September 8, 1993, at about 5:00 p.m., Roger Halley was struck by a bullet as he was driving on Central, a major street in Wichita. He died as a result of the gunshot wound. The bullet removed from Halley's body was fired from a .380 semiautomatic pistol, which was found in the attic of defendant's residence, bearing his fingerprint. Six spent cartridge casings were found in an alley across Central from a Coastal Mart gasoline station and convenience store in the vicinity in which Halley was shot. The casings found in the alley also were fired from the gun found in defendant's attic. One spent cartridge casing which had not been fired from that gun was found in the Coastal Mart parking lot.

The 15-year-old defendant went to the Coastal Mart that afternoon to get some chips and soda pop. He was a member of a gang and was dressed in its identifying color. While defendant was in the convenience store, members of a rival gang entered. Defendant later told a friend that they said to him, "What's up, Cuz?" There was testimony that the greeting directed to a member of a rival gang was disrespectful and "a good way to get injured." There was substantial evidence of ongoing violent and deadly conflict between defendant's gang and this rival gang.

A short time later defendant talked to Dale Caine, who was a fellow gang member with defendant in September 1993, in front of a house near the Coastal Mart. Defendant was carrying a gun, a .380, and he said that he shot at some members of a rival gang. He said that they were harassing him in the store, but he did not shoot at them in the store because he was being watched. Then when he was leaving they drove up and showed him they had a gun. Defendant said he crossed the street, looked over at the rival gang members, and started shooting. The rivals returned fire; Caine thought he remembered defendant saying that they shot back one time.

In a taped interview with police, defendant said that while he was in the convenience store a rival gang member came in and made hand signals at him. Defendant "flipped him off." There were two other rival gang members in a car outside. After he left the store and was in the alley across the street, their car was still in the Coastal Mart parking lot. The driver got out of the car and

shot at defendant. Before he started firing, defendant put his soda pop down and then ran back down the alley. Defendant said that he fired five times. About the exchange of shots with the rival gang member, defendant said: "He was trying to hit me, I was trying to hit him."

On appeal, defendant raises two issues. First, he contends the district court erroneously instructed the jury on the transferred intent theory of intentional, premeditated murder. In pertinent part, the information against defendant states:

"[O]n or about the 8th day of September, 1993, A.D., one QUILAN Z. JONES, did then and there unlawfully, intentionally, kill a human being, to-wit: Roger E. Halley, intentionally and with premeditation by shooting him, inflicting injuries from which the said Roger E. Halley did die on September 8, 1993."

In addition to being instructed on the elements of intentional, premeditated first-degree murder, the jury was instructed as follows: "When a homicidal act is directed against one other than the person killed, the responsibility of the actor is exactly as it would have been had the act been completed against the intended victim." Defense counsel objected to this instruction on the ground that the evidence did not support it.

On appeal, defendant takes a different approach. Because the only evidence was that Halley was not the intended victim, defendant argues that the only theory of premeditated first-degree murder supported by the evidence is transferred intent. The problem which he identifies is that transferred intent was not spelled out in the information. He argues that the case should not have been submitted on transferred intent theory because it was not expressly charged, and that the information was broadened by the district court's instruction on transferred intent. Because trial counsel objected to the transferred intent instruction only on evidentiary grounds, the State complains that defendant is raising a new claim on appeal. Defendant does not address the issue of his raising a new claim on appeal. With regard to the scope of the court's review, he states only that review of a legal conclusion is unlimited. He never expressly states that the information is defective, nor does he allude to the well-known rules for appellate review of a defect

in the charging document. See *State v. Hall*, 246 Kan. 728, Syl. ¶¶ 12-13, 793 P.2d 737 (1990). For that matter, Count I of the information charges premeditated first-degree murder according to the statute and is not defective in that way. The majority of cases cited by defendant involve the principle that instructions in a criminal case should conform to the charges in the information rather than broaden them. Although not clear, the issue raised on appeal appears to be an error in instructions. That is how it is treated in the cases relied on by defendant. In the present case, there was no objection to the instruction itself. This court, therefore, will review the matter for clear error. "An instruction is clearly erroneous only if the reviewing court reaches a firm conviction that if the trial error had not occurred there is a real possibility the jury would have returned a different verdict." *State v. Deavers*, 252 Kan. 149, Syl. ¶ 4, 843 P.2d 695 (1992).

Defendant does not seem to have settled on the precise nature of his complaint. As a result, some of his arguments seem more relevant to an alleged defect in the information than to an alleged error in instructions. Defendant contends that he was prejudiced because the information did not fully apprise him of the charge. He asserts: "The State's use of the doctrine of transferred intent subjected Mr. Jones to an entirely different set of facts than he would have faced under the crime charged, the premeditated murder of Rob [*sic*] Halley." This assertion is at odds with other statements made in defendant's brief.

First, defendant recognizes that transferred intent is an accepted principle in the courts of this state. In *State v. Moffitt*, 199 Kan. 514, 535, 431 P.2d 879 (1967), *overruled on other grounds State v. Underwood*, 228 Kan. 294, 615 P.2d 153 (1980), this court stated:

"The fact that the homicidal act was directed against one other than the person killed does not relieve the slayer of criminal responsibility. It is generally held that such a homicide partakes of the quality of the original act, so that the guilt of the perpetrator of the crime is exactly what it would have been had the assault followed upon the intended victim instead of another. (1 Wharton's Criminal Law and Procedure, Homicide, §193, p. 438.) The same rule applies where the felony murder rule is asserted to sustain a conviction for murder in the first degree or felonious assault."

In *State v. Stringfield,* 4 Kan. App. 2d 559, 561, 608 P.2d 1041, *rev. denied* 228 Kan. 807 (1980), the Court of Appeals quoted a catchy phrase from an encyclopedia:

" 'Under this rule, the fact that the bystander was killed instead of the victim becomes immaterial, and the only question at issue is what would have been the degree of guilt if the result intended had been accomplished. The intent is transferred to the person whose death has been caused, or as sometimes expressed, the malice or intent follows the bullet.' 40 Am. Jur. 2d, Homicide § 11, pp. 302-303." 4 Kan. App. 2d at 561.

Second, defendant states that the only theory of premeditated murder which is supported by the evidence is transferred intent, and he states that it is undisputed that Halley was not the intended target of the bullet. He was well aware of the State's case against him. In these circumstances, defendant's claim that the State's use of the doctrine of transferred intent subjected him to an entirely different set of facts than he would have faced under the crime charged is not credible. The requisite intent for premeditated murder may be transferred, as a matter of law, and in the factual circumstances of this case, that intent must be transferred. Neither should have been a surprise to defendant.

For the same reasons, defendant's claim that his trial strategy might have differed if the information had spelled out transferred intent has no merit. In addition, the example given in his brief of a possible difference in trial strategy concerns instructions rather than trial strategy. At the time of the instruction conference, defense counsel had heard the evidence, and that, rather than the information, should have been the basis for requested instructions.

Of the Kansas cases cited by defendant, the only one he discusses is *State v. Redford,* 242 Kan. 658, 750 P.2d 1013 (1988). Aggravated kidnapping was among Redford's convictions. The information charged that he took the victim by threat or force with the intent to hold her to inflict bodily harm on or to terrorize her and that he did inflict bodily harm on her. The trial court added another type of intent. The jury was instructed that to prove the charge of aggravated kidnapping, it had to be shown that Redford took the victim by threat or force *to facilitate the commission of a crime* or to inflict bodily injury or to terrorize her and that he did inflict

bodily injury on her. 242 Kan. at 669. Redford argued that the instruction improperly broadened the information. The court stated:

"The general rule is that instructions should follow the charges contained in the information and should not be broader than the information. *State v. Turbeville*, 235 Kan. 993, 997, 686 P.2d 138 (1984).

"The facts in this case, however, are similar to those in *Turbeville*, in which we held the defendant's substantial rights were not prejudiced by violation of the rule. In *Turbeville*, the trial court added the alternative intents 'to terrorize the victim or another' or 'to facilitate flight' to the aggravated kidnapping instruction. We held because this language was taken directly from the statute and was supported by the evidence presented at trial, the error was harmless. The broadening of the instruction did not charge an additional crime but only stated several different kinds of intent by which aggravated kidnapping could be committed. The charge of aggravated kidnapping under the statute fully advised the defendant of the nature of the charges against him and did not mislead him in preparing his defense.

. . . .

"It is apparent the court added an additional intent under the statute as in *Turbeville*. As in *Turbeville*, there was evidence supporting the additional theory that Redford kidnapped Donna with intent to facilitate the commission of the crime of rape and sodomy. We hold there was error, but it was harmless under the facts of this case." 242 Kan. at 670-71.

In the present case, as in *Redford*, there was evidence supporting the intent theory which was stated in the instruction. Here, there was evidence that defendant intended to kill the rival gang member or members but killed Halley instead. The contention that defendant was not fully apprised of the charges already has been discussed and dismissed.

Defendant also argues that his case is different because transferred intent is not mentioned in the first-degree murder statute. He seems to be suggesting that what was harmless error in *Redford* cannot be harmless in this case. We do not agree. As discussed in *Redford*, the statute sets out four distinctive types of intent for which the taking of a person constitutes kidnapping. An information which charged the taking of a person without specifying at least one of the types of intent would not charge the crime of kidnapping because it is the intent which transforms what otherwise might be lawful conduct into a criminal offense. By the same

token, an information which charged the taking of a person for ransom, for example, might not fairly inform the defendant of the offense charged if the evidence against him showed another type of intent. Thus, it was error for the district court judge to instruct on a type of intent which had not been specified in the information against Redford, but, because the evidence supported the added theory, the error was harmless. In contrast, the pertinent portion of the statute for intentional, premeditated murder describes criminal conduct, and an information couched in the terms of the statute informs the defendant of the charge. The transferred intent theory is an established principle in Kansas criminal law so that counsel for any defendant charged with premeditated murder in the circumstances of the present case should expect it to apply. Those circumstances are that defendant admits shooting at a rival gang member or members with a certain gun and a passerby died from injuries caused by a bullet shot from that gun. If nothing else in the information revealed the precise nature of the offense, the alternative charge, which states that defendant shot and killed Halley while attempting to commit first-degree murder, surely did. The only reasonable construction of the alternative charge is that defendant killed Halley when trying to kill someone else. Thus, defendant's intention to kill one person is transferred to the victim under established law.

Defendant states that there are no Kansas cases on point and discusses two out-of-state cases. We find neither case to be on point. He also cites *State v. Wise*, 237 Kan. 117, 697 P.2d 1295 (1985), for the proposition that he "could not be convicted of premeditated first degree murder based upon transferred intent where that intent was not charged." He likens a charge of transferred intent to a charge of felony murder. There is nothing in *Wise* to support either the contention or the comparison. Wise was charged with both premeditated murder and felony murder for the same killing. The jury acquitted him of the first and convicted him of felony murder. The court suggested that the better practice would be to charge in the alternative but concluded that there was no error. 237 Kan. at 120-21.

In the present case, if giving the instruction were error, it would be harmless. However, we conclude the instruction was not erroneous, and the district court did not err in instructing the jury on transferred intent.

We next consider if the attempted first-degree murder of a rival gang member or members can be the underlying felony for the felony-murder charge for the death of Roger Halley. Defendant was charged with killing Halley intentionally and with premeditation or, in the alternative, killing Halley while attempting to commit an inherently dangerous felony, first-degree murder. With regard to the first charge, the statute in effect at the time provided that "[m]urder in the first degree is the killing of a human being committed . . . [i]ntentionally and with premeditation." K.S.A. 1993 Supp. 21-3401(a). With regard to the alternative charge, K.S.A. 1993 Supp. 21-3401(b) provided that "[m]urder in the first degree is the killing of a human being committed . . . in the . . . attempt to commit . . . an inherently dangerous felony as defined in K.S.A. 1993 Supp. 21-3436." K.S.A. 1993 Supp. 21-3436(b) provided in pertinent part that murder in the first degree committed intentionally and with premeditation

"shall be deemed an inherently dangerous felony only when such felony is so distinct from the homicide alleged to be a violation of subsection (b) of K.S.A. 21-3401 . . . as to not be an ingredient of the homicide alleged to be a violation of subsection (b) of K.S.A. 21-3401 . . . ."

Both theories were submitted for the jury's consideration. In addition to being instructed on the elements of the offenses, the jurors were told:

"The State may prove murder in the first degree by proving beyond a reasonable doubt that the defendant killed Roger E. Halley and that such killing was done while attempting to commit murder in the first degree or in the alternative by proving beyond a reasonable doubt that the defendant killed Roger E. Halley intentionally and with premeditation, as fully set out in these instructions."

The jury returned a general verdict of guilty of first-degree murder.

On appeal, defendant argues that the offense of attempted intentional and premeditated murder of the rival gang member or members will not support the felony-murder charge. Defense

counsel raised this issue at the close of the evidence in the form of a motion to dismiss the felony-murder charge. The motion was denied.

Here, defendant contends that attempted murder of the rival gang member or members is an ingredient of the homicide of Halley and, therefore, is not deemed to be an inherently dangerous felony for the purpose of 21-3436 and 21-3401(b). He states this argument in terms of merger. The court has stated that, when the alleged underlying felony is "an integral part of the homicide," "it merged therewith and could not serve as the underlying felony." *State v. Lucas*, 243 Kan. 462, 470, 759 P.2d 90 (1988), *aff'd on rehearing* 244 Kan. 193, 767 P.2d 1308 (1989).

The parties generally agree on which Kansas cases pertain to this issue, but they predictably draw different lessons from them. In *State v. Fisher*, 120 Kan. 226, 243 Pac. 291 (1926), the defendant was charged in the first count with murder in the first degree of John Michael Foley and in the second count with murder of John Michael Foley while perpetrating or attempting to perpetrate an assault with a deadly weapon on members of the Foley family. The deceased was a small boy who was traveling with other members of his family in an automobile without permission across fields owned by the defendant's father. The boy's father was driving and stopping periodically to cut fences so that they could proceed. Defendant fired two or three shots at the automobile. He stated that he fired at the tires and the gasoline tank in order to stop the car. On appeal, defendant complained of the instructions on the second count, and the State contended "that if murder is committed in the perpetration or the attempt to perpetrate any other felony, it is murder in the first degree." 120 Kan. at 230. The court rejected this argument as being much too broad: "The effect of it would be to make any homicide, not excusable or justifiable, which by our statute is defined to be manslaughter in any of the degrees, or murder in the second degree, to constitute murder in the first degree." 120 Kan. at 230. In order to avoid this effect, the elements " 'constituting the felony must be so distinct from that of the homicide as not to be an ingredient of the homicide indictable there-

with or convictable thereunder.' [Citation omitted.]" 120 Kan. at 231.

In *State v. Leonard*, 248 Kan. 427, 430, 807 P.2d 81 (1991), the defendant was charged with first-degree murder committed while perpetrating aggravated assault on numerous named persons other than the deceased. Huffman died as a result of being run over when Leonard drove his truck toward a group gathered in a parking lot. There was testimony that Leonard had said, without identifying anyone, that he was going to kill "the son of a bitch" and "the son of a bitches." 248 Kan. at 428-29. The trial court dismissed the felony-murder charge on the ground that it merged with the underlying felony of aggravated assault. The trial court and this court agreed that *Fisher* controlled the felony-murder issue. 248 Kan. at 430. In each case the defendant's single act, of shooting at the car in *Fisher* and of driving the truck into a crowd in *Leonard*, was the basis for both charges. In *State v. Lucas*, 243 Kan. 462, Syl. ¶ 4, the court stated: "Time, distance, and the causal relationship between the underlying felony and the killing are factors to be considered in determining whether the killing is a part of the felony and, therefore, subject to the felony-murder rule." Referring to this maxim, the court considered the facts of *Leonard*:

"Leonard's *one act* of driving the semi-truck through the crowd is the basis for both charges. This one act is not separated in time and distance. The one act caused the killing. Because there was only one act, the elements of the aggravated assault are not distinct from the homicide. The aggravated assault charges merged with the felony-murder charge." 248 Kan. at 431.

Defendant contends that the same conclusion is inescapable in his case. Echoing the court's statement in *Leonard*, defendant asserts: His one act of shooting at the rival gang member(s) is the basis for the underlying felony of attempted first-degree murder of the gang member(s) and for the killing of Halley. The one act is not separated in time and distance, and the one act caused the killing. Because there was only one act, the elements of the attempted murder(s) are not distinct from the homicide. He concludes, therefore, that the attempted murder(s) merged with the homicide.

The basis for what this court concluded in *Leonard* differs somewhat from defendant's premise. Leonard originally was charged with one count of first-degree felony murder and multiple counts of aggravated assault, and the court concluded that the assault charges merged with the murder charge. In the present case, defendant was charged with and tried on only one count. He did not stand trial on charges of both attempted murder of the gang member(s) and murder of Halley.

The distinction which the State urges this court to make is that in *Leonard* and *Fisher*, the victim of the homicide was one of the intended victims of the underlying felony. In the present case, Halley was not an intended victim of the attempted murder(s). The State relies on the three cases also cited by defendant: *State v. Prouse*, 244 Kan. 292, 767 P.2d 1308 (1989); *State v. Lucas*, 243 Kan. 462; and *State v. Moffitt*, 199 Kan. 514.

In *Moffitt*, the defendant was found guilty of possessing a pistol after conviction of a felony and of using the pistol to commit homicide. Moffitt argued that the felony-murder rule could not be applied to the facts of his case. The court concluded that possession of a pistol after having been convicted of a felony could be the underlying felony for purposes of charging felony murder. In the course of its discussion, the court stated:

"Reference has previously been made to the case of *State v. Fisher, supra*, which holds in effect that the words 'other felony' used in 21-401, *supra*, refer to some felony collateral to the homicide, and not to those acts of personal violence to the deceased which are necessary and constitute elements of homicide itself. They are merged in it and do not, when consummated, constitute an offense distinct from homicide." 199 Kan. at 533.

On the basis of this statement, the State contends that "*Moffitt* stands for the proposition that when the underlying offense constitutes personal violence *to the deceased* the underlying offense merges with the homicide and a conviction for felony murder will not lie." (Emphasis added.)

The State finds the same proposition in *Lucas*. In that case, the young victim of child abuse died. Lucas was charged with and convicted of child abuse of the deceased victim and her felony murder based on the underlying felony of child abuse. It was in *Lucas* that

the court set out the rule relied upon in *Leonard*, having to do with time, distance, and the causal relationship being factors in a determination whether the killing is a part of the underlying felony. Here is a portion of the court's reasoning on the subject of child abuse of the deceased victim not constituting the underlying felony for felony murder:

"Clearly, abuse of a child as defined by K.S.A. 1987 Supp. 21-3609 is a felony inherently dangerous to human life and no contrary assertion is made herein. Rather, the issue herein is whether the underlying or collateral felony is so distinct from the homicide as not to be an ingredient of the homicide. If the underlying felony does not meet this test it is said to merge with the homicide and preclude the application of felony murder. Thus, a crime such as second-degree murder may not serve as the underlying felony supporting first-degree felony murder because second-degree murder is one of the lesser included offenses of first-degree murder. Otherwise, all degrees of homicide would constitute murder in the first degree, regardless of the defendant's intention or premeditation. First-degree premeditated murder (or any lesser degree of homicide) could, of course, constitute the requisite underlying felony where, for instance, a defendant kills victim B during his or her commission of a homicide on victim A. The homicide of victim A could be the underlying felony for a felony-murder charge for the death of victim B." *Lucas*, 243 Kan. at 466.

As the State notes, the hypothetical example given by the court in *Lucas* differs from the present case only in the detail, irrelevant to the legal effect, of defendant's not being successful in killing his intended victim.

In *Prouse*, the defendant was convicted of child abuse of his young daughter and of felony murder for her death from abuse. By the time *Prouse* was before this court, a rehearing had been granted in *Lucas* and the original opinion had been affirmed. Thus, in accordance with *Lucas*, Prouse's felony-murder and child abuse convictions were reversed and the case was remanded for trial on appropriate charges. 244 Kan. at 297. The court elaborated only to the following extent:

"The collateral felony must, therefore, be felonious conduct other than the lethal act itself. Thus, a homicide occurring during the commission of an independent felony, such as aggravated robbery, rape, or kidnapping, comes under the felony-murder statute (K.S.A. 21-3401). However, the lethal act itself cannot serve as the independent collateral felony necessary to support a felony-murder conviction. Thus, an aggravated battery (K.S.A. 21-3414) resulting in the death of

the victim merges into the homicide and cannot serve as the collateral felony for felony-murder purposes. For further illustration, consider the situation where a robber shoots the victim during the commission of an aggravated robbery. If the victim lives, the robber could be convicted of the two separate felonies he or she committed—aggravated battery and aggravated robbery. If the victim dies as a result of the injuries so received, the robber may still be convicted of two felonies—felony murder and aggravated robbery. However, if the only felonious conduct involved is the cause of the victim's death, then the doctrine of merger prevents the prosecution from splitting the act into a felony murder and a collateral felony charge. Therefore, an aggravated battery cannot serve as the collateral felony for felony murder. We then held in *Lucas* that designating an aggravated battery against a child as child abuse does not avoid the merger doctrine and result in two independent felonies." 244 Kan. at 296-97.

Based on these cases in which the underlying offense merges with felony murder because the intended victim of the underlying offense and the homicide victim are one and the same, the State contends that, when the intended victim of the underlying offense and the homicide victim are different people, the underlying offense is independent and collateral to the homicide. Using language from these cases, the State justifies the rule on the ground that the underlying offense did not involve a personal act of violence to the deceased. It may also be said that this is not a case in which the only felonious conduct is the cause of the victim's death. Although there is only one physical act, there are two types of culpable conduct. The attempt to kill A is felonious conduct, and killing B is felonious conduct. See *Prouse*, 244 Kan. at 297. In circumstances where the inherently dangerous act is directed at A and A dies as a result of it, there is only one act and only one type of felonious conduct.

The State offers the following explanation of the rulings in *Fisher* and *Leonard* within this framework: In those cases, the deceased victim was one of a group of people against whom the violent underlying felonious act was directed, but in neither case was any particular victim identified by the defendant. Thus, it cannot be said that the intended victim of the underlying felony is different from the actual victim, and the merger doctrine would apply. Fisher shot at the tires and gasoline tank of a car carrying a number of people who were strangers to him, and his shots killed one of

the passengers in the car. Leonard drove his truck into a group of people gathered in a parking lot, and all escaped harm except Huffman. In *Leonard*, the State argued "that the merger doctrine does not apply if the intended victim of the underlying felony is different from the actual victim." 248 Kan. at 431. The State, however, conceded that it could not prove who the intended victim was, and the court found the argument "not persuasive" in the circumstances. 248 Kan. at 431.

In this regard, this court has expressed several different concerns relative to the felony-murder doctrine. One is the possibility of a defendant's being charged with two offenses based on the same act. Another is the possibility of a defendant's being charged with first-degree murder regardless of the degree of homicide supported by the evidence. These concerns underscore this court's different statements about felony murder. For example, in *Prouse* it was stated that the lethal act "cannot serve as the independent collateral felony necessary to support a felony-murder conviction." 244 Kan. at 296-97. In *Leonard*, the same principle was stated as follows:

"Leonard's *one act* of driving the semi-truck through the crowd is the basis for both charges. This one act is not separated in time and distance. The one act caused the killing. Because there was only one act, the elements of the aggravated assault are not distinct from the homicide. The aggravated assault charges merged with the felony-murder charge." 248 Kan. at 431.

In *Lucas*, the following statement was made about what could be a single act:

"First-degree premeditated murder (or any lesser degree of homicide) could, of course, constitute the requisite underlying felony where, for instance, a defendant kills victim B during his or her commission of a homicide on victim A. The homicide of victim A could be the underlying felony for a felony-murder charge for the death of victim B." 243 Kan. at 466.

In the present case, only one count of murder was charged against defendant. He was not charged with an underlying felony. Thus, in this case, neither of the concerns which seem to underlie the court's statements is present. Defendant was not charged with two offenses based on the same act. Nor was he charged with first-degree murder when there was no evidence of commensurate in-

tention or premeditation. Thus, neither double jeopardy nor elevation of the degree of homicide without regard to defendant's intention is at issue. In general, the lethal act cannot serve as the independent collateral felony necessary to support a felony-murder conviction. However, this rule does not apply where the deceased was not an intended victim of the lethal act. Where, as in the present case, the attempt to kill one person results in the death of another, the collateral felony of attempting to murder is so distinct from the homicide as not to be an ingredient of it. The collateral felony of attempted murder is not a lesser included offense of the homicide, and it does not merge with the homicide. Here, the attempted murder of the rival gang member(s) is an underlying felony which will support a felony-murder charge against defendant for the death of Halley.

In addition, even if the felony-murder theory were flawed for the reason suggested by defendant, it would not necessitate reversal. Defendant contends that the district court's permitting the jury to consider the felony-murder theory is error which requires reversal because it is impossible to tell from the general verdict form on which theory the jury based its finding of guilty of first-degree murder. In the circumstances of this case, however, the same evidence supports either charge, and both charges are first-degree murder. The evidence showed that defendant shot at the rival gang member(s) and killed a passerby. Under the transferred intent theory, this evidence supports the charge of first-degree intentional, premeditated murder of Halley. Under the felony-murder theory, precisely the same evidence supports the charge of first-degree felony murder of Halley committed in the attempt to commit the intentional, premeditated murder of another. Not being able to determine from the general verdict form on which theory the jury based its verdict, therefore, is immaterial. In order to reach the verdict, the jurors had to agree that the evidence necessary to support either charge had been shown.

The final issue raised by the defendant is whether the district court should have instructed on the lesser included offenses of intentional second-degree murder and voluntary manslaughter. The district court instructed the jury on second-degree uninten-

tional murder and on involuntary manslaughter. The jury was told that the charge of second-degree murder would be established if it had been proved that defendant killed Halley "unintentionally but recklessly under circumstances showing extreme indifference to the value of human life" on September 8, 1993, in Sedgwick County. It was told that the charge of involuntary manslaughter would be established if it had been proved that defendant unintentionally killed Halley "during the commission of a lawful act in an unlawful manner; or recklessly."

Defendant contends that the district court breached its affirmative duty to instruct on all lesser offenses for which there is evidence on which he might be convicted. He contends that instructions on intentional second-degree murder and voluntary manslaughter also should have been given. The State insists that there was no evidence to support those instructions. The district court's duty to instruct on lesser included offenses "does not arise unless there is evidence supporting the lesser offense." *State v. Patterson*, 243 Kan. 262, Syl. ¶ 2, 755 P.2d 551 (1988).

Defendant is aware that instructions on lesser included offenses of felony murder often are not required. In *State v. Strauch*, 239 Kan. 203, Syl. ¶ 7, 718 P.2d 613 (1986), this court stated:

"When murder is committed during the commission of a felony, the rule requiring instructions on lesser included offenses does not apply. The felonious conduct is held tantamount to the elements of deliberation and premeditation which are otherwise required for first-degree murder. It is only when the evidence that the underlying felony was committed is weak, inconclusive or conflicting that instructions on lesser included offenses may be required. Under the facts of this case, it is *held*: The evidence on the charge of aggravated criminal sodomy was neither weak, inconclusive, nor conflicting and the trial court properly denied defendant's requested instructions on the lesser included offenses for the alternative charge of felony murder."

Strauch "was charged with premeditated first-degree murder and in the alternative felony murder, with the underlying felony being aggravated criminal sodomy." 239 Kan. at 207. "Instructions on the lesser included offenses of second-degree murder and voluntary manslaughter were given for the charge of premeditated murder." 239 Kan. at 218. Strauch's request for instructions on lesser in-

cluded offenses for the alternative charge of felony murder was denied. Strauch was convicted of premeditated murder and not felony murder.

In the present case, it was not specified whether the lesser included offense instructions were for the charge of premeditated murder or the alternative charge of felony murder. Nor do we know whether defendant was convicted of premeditated or felony murder.

Defendant contends that it is implicit in the district court's instructing on the lesser included offenses of unintentional second-degree murder and involuntary manslaughter that the instructions were required because evidence that the underlying felony was committed was weak, inconclusive, or conflicting. It is equally reasonable to infer that the instructions were intended to be for the charge of premeditated murder. If so, the general rule with regard to lesser included offense instructions rather than the rule for felony-murder charges should apply.

K.S.A. 1993 Supp. 21-3402 defines second-degree murder as follows: "Murder in the second degree is the killing of a human being committed: (a) Intentionally; or (b) unintentionally but recklessly under circumstances manifesting extreme indifference to the value of human life." The jury was instructed on subsection (b). Defendant contends that the evidence warranted an instruction on subsection (a). This court has stated that "[t]he duty of the trial court to instruct on the lesser included offense is applicable only when the evidence introduced at the trial is such that the defendant might reasonably have been convicted of the lesser offense." *State v. Dixon*, 248 Kan. 776, Syl. ¶ 1, 811 P.2d 1153 (1991). In his brief, defendant points to evidence that he waited until he was out of danger and then he returned from the alley to fire the first shots.

The State argues that premeditation is evident in the evidence singled out by defendant. We agree. According to the State, in its version of the incident, defendant considered shooting the rival gang member(s) in the convenience store, but refrained from doing so because he was being watched. He left the store, walked across the street, set down his soda pop, and prepared to shoot. In this version as well, the shooting was premeditated and intentional. In

defendant's taped version, he returned fire rather than initiating it, and he asserted that he was acting in self-defense. The jury was instructed on self-defense. Thus, in neither of these versions was there evidence to support an instruction on second-degree murder under subsection (a) of 21-3402.

K.S.A. 1993 Supp. 21-3403 provides in pertinent part: "Voluntary manslaughter is the intentional killing of a human being committed: . . . (b) upon an unreasonable but honest belief that circumstances existed that justified deadly force under K.S.A. 21-3211, 21-3212 or 21-3213 and amendments thereto." Defendant contends that an instruction parallelling subsection (b) of 21-3403 was warranted by the evidence in this case. It is his contention that the jury could have found that he believed the rival gang members' use of force was imminent even though the belief would have been unreasonable. The evidence he relies on is that he was outnumbered by members of a rival gang, that they were engaging in provocative and disrespectful conduct toward him, that the rival gangs recently had engaged in deadly conflict, and that they showed him a gun. The State counters that neither of their versions of events supports an instruction that defendant killed upon an unreasonable but honest belief that deadly force was justified. In the State's version, defendant was not only the aggressor who fired the first shots, he also used deadly force after any perceived threat had been dissipated. We do not find that this evidence reasonably would support a finding that defendant honestly, but unreasonably, believed that the circumstances in which he fired the shots justified deadly force. In defendant's version, he was acting in self-defense. If he was acting in self-defense, his belief that circumstances existed that justified deadly force would not be unreasonable.

Affirmed.